UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

IN RE:

SEAN M. MURRAY,                                    CHAPTER 7

                                                   CASE NO. 17-44157
                        DEBTOR.

_____

SEAN M. MURRAY,
                        *Plaintiff,*

                                                   ADV. PRO. CASE NO. 18-01141
            -against-
                                                   JUDGE: Hon. Elizabeth S. Stong
JOHN AND JANE DOE CORPORATIONS
AND ENTITIES, SPECIALIZED LOAN
SERVICING, LLC AND NATIONSTAR
MORTGAGE LLC D/B/A MR COOPER, AS
SERVICING AGENTS FOR FEDERAL
HOME LOAN MORTGAGE CORPORATION,

                        *Defendants.*

_____

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable herein pursuant to Federal Rule of Bankruptcy Procedure 7056, Specialized Loan Servicing, LLC ("SLS" or "Defendant"), by and through its attorneys, Shapiro, DiCaro & Barak, LLC, hereby moves for summary judgment on all claims against it alleged in the Plaintiff's Complaint.

## BACKGROUND

1.      SLS is a secured creditor of Sean M. Murray (the "Debtor" or the "Plaintiff"), pursuant to a note executed by the Debtor on March 20, 2008 (the "Note") with HSBC Mortgage Corporation (USA) ("HSBC").    Contemporaneously, the Debtor

executed a Security Agreement encumbering real property located at 35-21 79th Street, Unit 4E, Jackson Heights, NY 11372 (the "Property"), a Proprietary Lease, and Assignment of Proprietary Lease (collectively referred to as the "Loan"). Copies of the Note, the Security Agreement, Proprietary Lease, Assignment of Stock Certificate and the UCC financing statement are annexed hereto as **Exhibit "A"**.

2.      The Loan was subsequently assigned from HSBC to Nationstar Mortgage LLC ("Nationstar") by a UCC Financing Statement Amendment recorded on December 15, 2016 and reflected as CRFN 2016000444774.

3.      The Loan was subsequently Assigned from Nationstar to SLS by a UCC Financing Statement Amendment recorded on February 7, 2018 and reflected as CRFN 2018000045046.

4.      The Debtor filed a petition for relief under Chapter 7 of the U.S. Bankruptcy Code on August 10, 2017.

5.      At the time of the filing of the petition, the Loan was held by Nationstar.

6.      As a result of a default in the post-petition obligations due under the Loan, Nationstar filed a Motion seeking Relief from the Automatic Stay (the "MFR") on December 13, 2017.

7.      On January 22, 2018, the Debtor filed opposition to the MFR, asserting that Nationstar lacked standing, and raising similar arguments to those raised in the Complaint concerning the Trustee's ability to avoid an allegedly unperfected lien.

8.      As discussed above, the loan was service released to SLS pursuant to UCC Amendment recorded on February 7, 2018.

9.      On April 13, 2018, the MFR was withdrawn by counsel to Nationstar as a result of the service release from Nationstar to SLS.

10.      On March 20, 2018, the Debtor filed a Motion for Contempt (the "Contempt Motion") against Nationstar and SLS, alleging violations of the automatic stay.

11.      With respect to SLS, the Contempt Motion was based solely the representation that counsel to SLS served the Debtor with a letter dated February 13, 2018.

12.      The Debtor settled the outstanding matters related to the Contempt Motion against SLS in October 2018 (the "Settlement Agreement").

13.      Although the exact terms of the Settlement Agreement are confidential, and shall not be filed in connection with this motion, the Settlement Agreement included a full resolution of all outstanding issues related to the Contempt Motion with respect to SLS.  A copy of the Settlement Agreement will be available for in camera review by the court on the return date of this MSJ.

14.      Contemporaneously with the execution of the Settlement Agreement, the Debtor and counsel to SLS executed a stipulation and order on consent withdrawing the Debtor's allegations with respect to SLS (the "Consent Order").  A Copy of the Consent Order is annexed hereto as **Exhibit "B"**.

15.      Upon information and belief, the Consent Order was submitted for execution by the Court, but has not yet been entered.

16.      On December 21, 2018, the Debtor filed the instant adversary complaint against SLS and Nationstar (the "Complaint").

17.    The Complaint challenges SLS' standing as a secured creditor of the Debtor, reiterates allegations raised in the Contempt Motion, and re-asserts the assertion that the Debtor can utilize the Trustee's avoidance powers to avoid the Loan on the Property for his own benefit.

## **GROUNDS FOR SUMMARY JUDGMENT**

18.    SLS requests an order granting summary judgment with respect to the Complaint.

19.    Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056(c), summary judgment should be granted to the moving party if the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." C*elotex Corp. v. Catrett*, 477 U.S. 317, 322 (*quoting* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

20.    There are three components to the Complaint, and each can be denied as a matter of law:

a.    The challenge to SLS' standing, which is primarily based on the assertion that the Loan was not properly recorded; and

b.    The allegation that the Loan is not perfected, and therefore can be avoided pursuant to the Trustee's avoidance power; and

c.    The allegations of stay violations against SLS, which have already settled.

*The Caselaw Cited by the Debtor in the Complaint is Inapplicable in the Instant Case*

21.     In Paragraph 32 of the Complaint, the Debtor cites cases from the Northern District of Indiana and (*In re Myers*, 262 B.R. 445 (Bankr. N.D. In. 2001)) and the Middle District of Pennsylvania (*In re Trosky*, 371 B.R. 1 (Bankr. M.D. Pa. 2006)).

22.     These cases are inapplicable in the instant case because they involve the involuntary transfer of property.

23.     Upon information and belief, the Debtor remains in title to the Property in the instant case and has at all times relevant to the Complaint.

24.     The Loan itself is clearly a voluntary transaction.

25.     Upon information and belief, there has been no transfer of the Property at all, much less an involuntary one.

26.     The *Myers* case, cited by the Debtor, clearly acknowledges this issue, noting that "Section 522(h) only allows a debtor to prosecute actions designed to avoid a transfer of property. It does not authorize suits seeking declaratory relief.  The present action seeks only declaratory relief — that Defendant's mortgage is an invalid forgery — and not the avoidance of any transfer to the Defendant. Accordingly, it is not based upon and states no claim under § 522(h)." *In re Myers*, 262 B.R. 445 (Bankr. N.D. In. 2001).

27.     In the instant case, as in *Myers*, the Debtor is seeking declaratory relief declaring the Loan void.

28.     In the *Trosky* Case, also cited by the Debtor, the court determined that a voluntary mortgage was not a non consensual transfer, and was therefore explicitly excluded by Section 522(g).  *In re Trosky*, 371 B.R. 1 (Bankr. M.D. Pa. 2006).

29.     Judge Grossman also recently examined an nearly identical argument and again concluded that a debtor has no right under Sections 522(h) and 522(g) to attempt to avoid a consensual lien.

30.     The Trustee's avoidance powers cited by the Debtor are inapplicable.

31.     Therefore, the Debtor's position that he can avoid the Loan pursuant to the Trustee's strongarm powers must be denied as a matter of law.

*The Loan is Perfected*

32.     The basis of the Debtor's assertion that the Loan was unperfected is a typo in the name of the tenants corporation.

33.     The proper name of the tenants corporation is "35-21 79 St Tenants Corp".

34.     The UCC1 financing statement lists the correct Debtor's Name, the correct secured party, and is recorded on the correct parcel, and properly describes the property address in the description.

35.     However, the tenants corporation is listed as "235-21 79 St Corp" in the description in Section 4 of the financing statement.

36.     Under valid and controlling New York law, such a minor error would only affect the validity of the perfection of the Loan if the minor error rendered it "seriously misleading".

37.     For the minor error to render the financing statement seriously misleading, the primary question is whether a reasonably diligent search would be likely to discover the financing statement.

38.      In the instant case, the minor error was not in the name of the Debtor nor in the name of the secured party, but rather in the name of the tenant corporation found in the description found in the financing statement.

39.      Since the minor error would not have had any effect whatsoever on the indexing of the financing statement, it is clear as a matter of law that this minor error does not render the financing statement seriously misleading.

40.      Therefore, as a matter of law, the financing statement was effective and the Loan was properly perfected.

41.      Since the Loan is clearly perfected, the Debtor's arguments regarding the Trustee's avoiding powers clearly fail as a matter of law.[1]

42.      Even if the Debtor were entitled to utilize the Trustee's strong arm powers pursuant to Section 544, the Debtor would not be able to avoid SLS' validly perfected lien.

*SLS Has Standing*

43.      It is worth noting that, in addition to a valid chain of title, SLS is able to assert standing on the Loan by in hand possession of the original Note.

44.      Counsel to SLS will have in hand possession of the original Note at the return date for this MSJ for in camera review.

*The Allegations Related to the Contempt Motion Have Already Settled*

45.      Until the hearing which occurred on September 23, 2019, counsel to SLS was under the impression that the section of the Complaint entitled "Consolidated Claims

---

[1] It is worth noting that the Debtor seems to misunderstand the benefit of the Trustee's avoiding power, and seems to be under the impression that the Debtor would be permitted to retain the property free and clear of the Loan.  It is clear that the Loan is perfected, but if it had not been, were the Trustee to avoid the Loan, the recovered equity would go to the estate, and would be used to pay the Debtor's creditors.

for Relief" was only with respect to Nationstar as a direct result of the Settlement Agreement.

46.     This is the third "basis for relief" listed in the Complaint and will be referred to as the Debtor's "Third Cause of Action".

47.     SLS notes that paragraphs numbered 52-55 discussing the claims related to the Contempt Motion specifically address Nationstar, counsel to Nationstar, or HSBC.

48.     SLS is not specifically named in this section of the Complaint.

49.     However, at the status conference in this adversary proceeding which took place on September 23, 2019, the Debtor indicated on the record that all of the elements of the Complaint, including those related to the Contempt Motion, are being alleged against SLS as well.

50.     SLS contends that this aspect of the Complaint must be denied with respect to SLS as it was not plead in the Complaint, as listed above.

51.     Further, all conduct related to the Contempt Motion was already settled between the Debtor and SLS.

52.     On this basis, SLS contends that the Debtor's Third Cause of Action should be dismissed in its entirety with respect to SLS.

## CONCLUSION

53.     The Complaint erroneously asserts that SLS' lien on the Property is unperfected.

54.     The minor error in the financing statement does not render that financing statement materially misleading, and so does not render the Loan unperfected.

55.     The Complaint seeks to avoid SLS' loan on the Property utilizing caselaw applicable only in the case of an involuntary transfer of property, which is inapplicable here.

56.     The Complaint is silent with respect to SLS with respect to the claims related to the Contempt Motion, but at a recent conference the Debtor indicated that those claims are being alleged against SLS as well, despite SLS and the Debtor having entered into a valid and binding settlement agreement with respect to those claims.

**WHEREFORE**, SLS respectfully requests that the Court grant Defendant's Motion for Summary Judgment with respect to all claims raised in the Complaint.

Dated: November 11, 2019
      Melville, New York               Respectfully submitted,

                                      /s/ Robert W. Griswold
                                      Robert W. Griswold
                                      Bankruptcy Attorney
                                        Shapiro, DiCaro & Barak, LLC
                                        Attorneys for Nationstar Mortgage LLC as
                                        Servicer for The Bank of New York Mellon
                                        f/k/a The Bank of New York as Trustee for
                                        Home Equity Loan Trust 2007-FRE1
                                        One Huntington Quadrangle, Suite 3N05
                                        Melville, NY  11747
                                        Telephone: (631) 844-9611
                                        Fax: (631) 844-9525

# Exhibit "A"

# NOTE

**March 20, 2008**                    **FOREST HILLS**                    **NEW YORK**
[Date]                                          [City]                                          [State]

**35-21 79TH STREET, Unit 4E, JACKSON HEIGHTS, NY 11372**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $**195,600.00**    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **HSBC Mortgage Corporation (USA)**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        **5.8750%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st**        day of each month beginning on **May 01, 2008**        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **April 01, 2038**        , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **2929 WALDEN AVENUE, DEPEW, NY  14043**
        or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,157.05**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**NY 3120**

**NEW YORK FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

-5N(NY) (0005)        Form 3233 1/01
VMP MORTGAGE FORMS - (800)521-729
Page 1 of 3        Initials:

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.00% of** my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**NY 3120**

-5N(NY) (0005)                    Page 2 of 3                    Form 3233 1/01

Initials:

**10. UNIFORM SECURED NOTE**

.This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
SEAN MURRAY                -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                           -Borrower                                   -Borrower

Pay to the order of, without recourse
_____

HSBC MORTGAGE CORPORATION (USA)

By: _____
    Hilda Feliz, V.P. Secondary Marketing

[Sign Original Only]

NY 3120

-5N(NY) (0005)                    Page 3 of 3                    Form 3233 1/01



# SECURITY AGREEMENT

THIS SECURITY AGREEMENT dated the **20th** day of **March**           , **2008**    is between **SEAN MURRAY**

whose address is    **35-21 79TH STREET   Unit: 4E**

**JACKSON HEIGHTS, NY 11372**

("Borrower") and HSBC MORTGAGE CORPORATION (USA), a Delaware Corporation, having an office at 2929 Walden Avenue, Depew, NY, County of Erie and State of New York ("Lender").

**Definitions**

1. "I", "me", "mine" and "myself" shall mean each person listed above as borrower. "You", "your", and "yours" means HSBC Mortgage Corporation (USA).

2. "Cooperative Apartment" means the **439** shares of Capital Stock (the "Stock") of **35-21 79 ST TENANTS CORP** (the "Corporation") and the related Proprietary Lease to Apartment # **4E** in the building known as **35-21 79 ST TENANTS CORP** (the "Building"), in **QUEENS** County, New York.

**Loan**

On the same date as this Security Agreement I have signed a Note to you for **$195,600.00** plus interest, as evidence of the Cooperative Apartment Loan which you made to me. I agree to repay the loan in accordance with the terms of the Note.

**Security Interest**

As Collateral Security for my debt to you under the Note, I give you a security interest in the Stock and Proprietary Lease to my Cooperative Apartment, in all personal property now used in maintaining or operating the Cooperative Apartment, such as stove, refrigerator and air-conditioners, and all fixtures, which would normally go along with the Cooperative Apartment when it is sold, and in any additions to, substitutions for or replacement of the Stock, the Proprietary Lease or such personal property and fixtures (the "Security") and in the proceeds from any sale or other transfer of all or any part of the Security.

HSBC Mortgage Corporation (USA)                 1

## Delivery of Stock and Proprietary Lease

I have delivered to you my Stock endorsed by me blank or accompanied by a Stock Power signed by me in blank and my Proprietary Lease and a blank Assignment of my Proprietary Lease signed by me and you shall have the sole right to possess them until my Cooperative Apartment loan has been paid in full. You will have the right to receive any distribution of capital from the Corporation, which you will use to reduce the amount I owe you. After my Cooperative Apartment Loan has been paid in full, you will return the Stock and Proprietary Lease to me.

In the event that a substitute or Replacement Lease, or an amendment or extension, to the Proprietary Lease pertaining to the Cooperative Apartment is issued, I agree upon its receipt by me to immediately deliver it to you, along with a blank Assignment of such Lease signed by me. In the event that replacement or additional shares of Stock are allocated to the Cooperative Apartment, I agree upon receipt by me to immediately deliver it to you, endorsed by me in blank or accompanied by Stock Power signed by me in blank.

If this is a junior lien transaction, and if required by the prior lienholder ("First Secured Party"), I have delivered to the First Secured Party my Stock endorsed by me in blank or accompanied by a Stock Power signed by me in blank and my Proprietary Lease and a blank Assignment of my Proprietary Lease signed by me. I also have delivered to the First Secured Party and, until the termination of the First Secured Party's security interest, shall, without notice or demand, immediately deliver to the First Secured Party, any replacement, substitute or additional Stock that may be allocated to the Apartment, and any amendments or extensions to, or replacement of or substitute for, the Proprietary Lease.

I have delivered to you on or prior to the date of this Security Agreement a copy of the Stock and the duplicate original of the Proprietary Lease, together with a Stock Power signed by me in blank and an assignment of the Proprietary Lease. Until the termination of the First Secured Party's security interest, I shall, without notice or demand, immediately deliver to you a copy of any replacement, substitute or additional Stock that may be allocated to the Apartment, and any amendments or extensions to, or replacement of or substitute for, the Proprietary Lease.

I shall authorize the First Secured Party to deliver the Stock and the duplicate original Proprietary Lease (including any replacement, substitute or additional Stock and any amendments or extensions to, or replacement of or substitute for, the Proprietary Lease) then in its possession to you upon the termination of the First Secured Party's security interest, which authorization shall be irrevocable by me. In the event that the First Secured Party has delivered or shall deliver any of the foregoing documents to me, I shall receive such documents in trust for you and promptly deliver them to you. Upon the termination of the First Secured Party's security interest, I shall thereafter, without notice or demand, immediately deliver to you any replacement, substitute or additional Stock, and any amendments or extensions to, or replacement of or substitute for, the Proprietary Lease.

**Payment of Taxes and Performance Under the Proprietary Lease**

I will pay all maintenance charges, taxes, assessments and other charges due on the Cooperative Apartment. I will make all payments required by and perform my obligations under the Proprietary Lease.

**Ownership of Stock and Proprietary Lease**

I own the Stock of the Cooperative Apartment and I will not sell, assign or otherwise transfer the Cooperative Apartment without your prior written consent.

**Liens or Claims of Others**

No one other than myself owns or has any interest in or claims against the Cooperative Apartment except as follows:  ,  . I will protect the Cooperative Apartment and defend and keep the Cooperative Apartment free of other liens against the claims of all other persons. This Agreement is subject to the trust fund provisions of Section 13 of the New York Lien Law.

**Protection of Security**

I will provide, at no cost to you, whatever signed documents you need to establish your security interest in the Cooperative Apartment. I authorize you to prepare and sign such documents on my behalf if my signature is required and to file or record such documents, the Proprietary Lease or this Agreement with such governmental agencies as you consider appropriate, and I will pay all taxes and costs incurred by you in connection with such filings.

**Statement of Amount Due**

Within 5 days of a request from you, I will state in writing the amount I believe to be the unpaid balance I owe you and whether or not I believe I have any offsetting claims or defenses against the payment of the amount due.

**Damage by Fire or Other Casualty**

I will notify you of any damage to my Cooperative Apartment or the Building by fire or other casualty.

**Inspection of Cooperative Apartment**

You may from time to time inspect my Cooperative Apartment at any reasonable time.

**Default**

If any of the following events occur, I will be in default:

(1)   If any payment required by the Note is not made on time as required in the Note.

**HSBC Mortgage Corporation (USA)**                 3

(2) If any payment required by the Proprietary Lease is not made on time, or if I violate any terms or conditions of the Proprietary Lease, unless I remedy such default in the time and manner provided in the Proprietary Lease.

(3) I give notice to the Corporation or the Corporation gives me notice of termination or cancellation of the Proprietary Lease.

(4) I no longer use the Cooperative Apartment as my primary residence or I sublet or offer to sublet the Cooperative Apartment without your prior written consent.

(5) The Corporation shall fail to keep the Building insured or to repair or replace to your satisfaction any part of the Building damaged by fire or other casualty.

(6) I fail to repair to your satisfaction any part of my Cooperative Apartment damaged by fire or other casualty.

(7) If I become insolvent or if any proceeding under any insolvency or bankruptcy law is started either by or against me.

(8) If any of the statements I have made in this Security Agreement are not true or if I have not advised you of any substantial claims against me or my property.

(9) If I violate any of the terms and conditions of this Security Agreement.

## Consequences of Default

If I default:

(1) You may demand immediate payment of all unpaid amounts under the Note. If you demand payment, you will notify me at the address of the Building by registered or certified mail, return receipt requested. If I do not pay you within 30 days of the mailing of such notice, you will have the right, in addition to your other legal rights, to sell the Security at public or private sale pursuant to the Uniform Commercial Code.

(2) I will immediately vacate my Cooperative Apartment upon demand by you and turn over to you any Security which I have. You may seek to evict me from the Cooperative Apartment.

(3) I lose my right to vote my Stock and I hereby give you my proxy to vote my Stock as you wish in such event.

(4) You may notify me by registered or certified mail, return receipt requested, that you intend to keep the Security. If within 30 days from the mailing of such notice I object by notifying you in writing you must offer the Security for sale. If the net proceeds of any offer received would be large enough to repay the amount I owe you, you must sell the Security. If no offer is large enough you may keep the Security in full satisfaction of my debt.

HSBC Mortgage Corporation (USA)                     4                     

(5) You may seek appointment of a receiver without notice to me.

(6) The listing of these consequences of default in no way stops you from using any other rights you may have by law.

### Sale of Security After Default

If I am in default and I have not paid you within 30 days after you have notified me of your intention to sell the Security, you may choose the time and place of the sale and determine the terms of the sale. You may sell the Security for cash or on credit and you may make a loan to the purchaser and take a security interest in the Cooperative Apartment. In connection with the sale of the Security, you have the right to complete the incomplete Stock Power and Assignment of Proprietary Lease so that you can transfer the Cooperative Apartment. If you sell the Security, the proceeds shall be applied as follows:

(1) To the expenses of collecting, selling and delivering the Security, including (but not limited to) attorneys' fees, brokerage commissions, transfer fees and taxes;

(2) To the payment of any rent or other charges due under the Proprietary Lease;

(3) To the payment of my debt to you in full;

(4) The surplus, if any, will be paid to me, unless there are other valid claims to this money.

### No Sale of Security

If I sell, assign or otherwise transfer the Cooperative Apartment I must repay in full the entire amount due under the Note or this Security Agreement.

### Lender's Right of Set-off

If I am in default under the Note or this Security Agreement, in addition to any other rights that you have under the Note and this Security Agreement, you shall have such rights of set-off as may be permitted by applicable law.

### Non-liability of Corporation

I agree that the Corporation will not be liable to me if it transfers my Shares and Proprietary Lease as required by this Security Agreement; if it evicts me from the Cooperative Apartment because I am in default under this Security Agreement or if it refuses to transfer my Stock and Proprietary Lease to another person without your consent. I will repay the Corporation for any expenses or liability it may incur from any of these actions.

**HSBC Mortgage Corporation (USA)**          5                          

**Payment of Expenses**

You have the right to make payments for me or to take any action needed to comply with the terms of my Proprietary Lease or to protect or defend your Security. If you make any payments or incur any expenses in taking such action, including your attorneys' fees equal to 20% of the amount due you, I will repay you with interest at the maximum legal rate, at your request. All of these payments and expenses will be part of my total debt to you and may be paid from the proceeds of the sale of the Security.

**Right to Assign**

You have the right to assign this Security Agreement and your rights to the Security to another lending institution or person without my consent.

**My Responsibilities, Before and After Default**

I am a shareholder and lessee of the Corporation and as such I acknowledge it to be solely my responsibility to comply with all the terms and conditions of the Proprietary Lease, and until there is a default by me under this Agreement or the accompanying Note and you have demanded payment in full it shall also be solely my responsibility to make all required payments under the said Lease. You agree that until there is a default under this Agreement and you have demanded payment in full, and except as otherwise provided in this Agreement, I shall have all the rights and privileges of a shareholder and lessee. If there is a default by me I shall continue to have and exercise all the responsibilities of a shareholder and lessee, except as otherwise provided in this Agreement.

**More than One Signer**

If more than one person signs this Security Agreement, each signer will be fully responsible for complying with its terms.

**Who is Covered by Agreement**

My legal representatives, my executors, administrators and heirs will be responsible for carrying out the terms of this Security Agreement.

**Amending the Agreement**

This Security Agreement contains the full understanding between you and me and may only be changed in writing.

**Governing Law**

This Agreement is governed by federal law, and to the extent not preempted by federal law, the Law of Delaware. Matters related solely to the enforcement of your lien on my primary or secondary residence shall be governed by the law of the state in which the property is located.

**HSBC Mortgage Corporation (USA)**          6

<u>Notice</u>

All notices and demands are to be sent by certified or registered mail, return receipt requested (i) to me at the Cooperative Apartment address set forth above, and (ii) to you at the address set forth above. All notices shall be deemed to have been received two (2) business days after mailing.

SEAN MURRAY

State of New York )
                  ) ss.:
County   Queens  )

On the 20th day of March in the year 2008 before me, the undersigned, personally appeared, Sean Murray

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Robert Kaplan
Notary Public,
State of New York
#02KA4862944
Qualified in Queens County
Commission Expires May 19 2010

HSBC Mortgage Corporation (USA)          7

APARTMENT # 4E

SHARES : -439-

35-21 79 ST. TENANTS CORP.

Lessor,

-to-

Sean Murray

Lessee

PROPRIETARY LEASE

-107-

## INDEX

|  | PAGE | PAR. |
|---|---|---|
| Abatement of rent – |  |  |
| damage to apartment | 3 | 4(b) |
| not authorized – no defense | 6 | 12 |
| Additional rent payable as rent | 1 | 1(a) |
| Air conditioning | 3 | 3 |
| Alterations by Lessee – |  |  |
| consent required | 12 | 21(a) |
| mortgagee's requirements | 11 | 18(d) |
| Amendment of lease by shareholders | 5 | 6 |
| Annual reports by Lessor | 4 | 5 |
| "Apartment" defined | 1 |  |
| Apartment – |  |  |
| surrender on lease termination | 13 | 21(c) |
| use as dwelling – guests | 7 | 14 |
| Assignment of lease: |  |  |
| Conditions to be complied with | 7 | 16(a) |
| Death of Lessee | 8 | 16(b) |
| Fees – legal and other expenses | 7 | 16(a) |
| Directors' consent – discretion | 8 | 16(c) |
| Release of Lessee | 8 | 16(d) |
| Restrictions on | 18 | 31(c) |
| Statement that lease in effect | 9 | 16(f) |
| Assignment of Lessor's rights against occupant | 5 | 8 |
| Attorneys' fees and other expenses: |  |  |
| Action on Lessee's default | 16 | 28 |
| Assignment of lease | 7 | 16(a) |
| Automobiles – |  |  |
| Lessor not responsible for damage | 17 | 29(c) |
| House Rules – impeding access to entrance | 28 | 18 |
| Balcony – use and maintenance | 5 | 7 |
| Bankruptcy of Lessee – termination of lease | 18 | 31(b) |
| Books of account – inspection | 4 | 5 |
| Building, damage to | 3 | 4(a) |
| Cancellation of lease by Lessee – |  |  |
| "escape clause" | 21 | 35(a) |
| extension | 23 | 36(a) |
| by 80% of shares | 23 | 36(b) |
| Cancellation of prior lease and tenancy | 6 | 9 |

i

|  | PAGE | PAR. |
|---|---|---|
| Cash requirements of Lessor – | | |
| defined.......................... | 2 | 1(c) |
| failure to fix................... | 3 | 1(g) |
| Changes in provisions of lease............... | 5 | 6 |
| Changes in lease - not orally................. | 26 | 46 |
| Condemnation.............................. | 19 | 31(j) |
| Continuance of cooperative.................... | 23 | 37 |
| Cooperation by Lessee........................ | 15 | 24 |
| Covenants - to whom applicable............... | 24 | 39 |
| Damage to building – | | |
| repair by Lessor.......................... | 3 | 4(a) |
| abatement of rent...................... | 4 | 4(b) |
| expiration of lease.................... | 4 | 4(c) |
| waiver of subrogation.................. | 4 | 4(d) |
| Death of Lessee – | | |
| assignment of lease................... | 8 | 16(b) |
| bankruptcy exception.................. | 18 | 31(b) |
| Default by Lessee: | | |
| Covenants - default in performance....... | 18 | 31(e) |
| Lessor's rights after default........... | 19 | 32(a) |
| Reimbursement of Lessor's expenses...... | 16 | 28 |
| Sale of Lessee's shares................. | 20 | 32(c) |
| Subtenant - collection of rent.......... | 20 | 32(b) |
| Demised premises............................ | 1 | |
| Directors – | | |
| authority not exercisable by others...... | 2 | 1(d) |
| determinations conclusive............... | 2 | 1(c) |
| failure to fix cash requirements......... | 3 | 1(g) |
| Entry - apartment and storage space.......... | 15 | 25 |
| Equipment and appliances - remedying defects.. | 11 | 18(c) |
| "Escape clause"-cancellation of lease by Lessee | 21 | 35(a) |
| Expenses of Lessor on Lessee's default........ | 16 | 23 |
| Expiration of lease - fixed date.............. | 1 | |
| Expiration of lease - conditions.............. | 17 | 31 |
| Fire insurance - rate increase, Lessee's use.. | 12 | 20 |
| Fire or other cause.......................... | | |
| damage to building...................... | 3 | 4(a) |
| abatement of rent....................... | 4 | 4(b) |
| expiration of lease..................... | 4 | 4(c) |
| Fixtures - removal by Lessee................. | 13 | 21(b) |
| Foreclosure of mortgage - receiver........... | 24 | 38 |
| Guests - in apartment........................ | 7 | 14 |

ii

|  | PAGE | PAR. |
|---|---|---|
| House Rules - | | |
| existing............................... | 28 | |
| amendment - compliance covenant........... | 6 | 13 |
| Immunities of Lessor........................... | 16 | 29(a) |
| Indemnity - by Lessee......................... | 6 | 11 |
| Injunction - by Lessor........................ | 26 | 42 |
| Insurance - | | |
| increase in rates....................... | 12 | 20 |
| waiver of subrogation, effects.......... | 4 | 4(d) |
| Jury trial waiver............................. | 24 | 40 |
| Key - Lessee to furnish....................... | 15 | 25 |
| Laundry and washing machines - use............ | 16 | 29(b) |
| Lease - | | |
| cancellation by Lessee - "escape clause". | 21 | 35(a) |
| cancellation by Lessee - extension........ | 23 | 36(a) |
| cancellation by 80% of shares............. | 23 | 36(b) |
| changes in provisions..................... | 5 | 6 |
| existing lease superseded by.............. | 6 | 9 |
| expiration - see "Termination of Lease".. | 17 | 31 |
| form - all leases......................... | 5 | 6 |
| partial invalidity, effect................ | 26 | 44 |
| pledge by Lessee.......................... | 9 | 17 |
| Lessee more than one person.................... | 26 | 43 |
| Maintenance (rent) - see "Rent" | | |
| Maintenance of building by Lessor-Directors' | | |
| powers ..................................... | 3 | 3 |
| Marginal headings not party of lease........... | 26 | 45 |
| Mechanics' liens............................... | 14 | 23 |
| Mortgage - | | |
| foreclosure and receiver.................. | 24 | 38 |
| provisions as to alterations.............. | 11 | 18(d) |
| subordination clause...................... | 14 | 22 |
| Mortgage payments as Paid-in Surplus........... | 2 | 1(f) |
| Noises prohibited.............................. | 11 | 18(b) |
| Notices....................................... | 16 | 27 |
| Objectionable conduct - see "Termination of | | |
| Lease" | 18 | 31(f) |
| Occupancy by unauthorized person............... | 18 | 31(c) |
| Odors prohibited............................... | 11 | 18(b) |
| Partial invalidity of Lease - effect.......... | 26 | 44 |
| Penthouse - use and maintenance............... | 5 | 7 |
| Pledge of shares and lease by Lessee.......... | 9 | 17 |
| Quiet enjoyment............................... | 6 | 10 |

iii

|  | PAGE | PAR. |
|---|---|---|
| Remedies of Lessor – |  |  |
| additional remedies | 26 | 42 |
| default by Lessee | 19 | 32(a) |
| expenses recoverable | 16 | 28 |
| Lessor's right to remedy defaults | 12 | 19 |
| Rent (maintenance) – |  |  |
| how calculated | 1 | 1(a) |
| default – Lessor's rights | 19 | 32(a) |
| failure of Directors to fix | 3 | 1(g) |
| issuance of additional shares | 2 | 1(e) |
| no abatement or defense | 6 | 12 |
| payment monthly | 1 | 1(a) |
| subtenants, collection from | 20 | 32(b) |
| Repairs – |  |  |
| Lessee's obligations | 11 | 18(a) |
| Lessor's obligations | 3 | 2 |
| Report – annual, Lessor to furnish | 4 | 5 |
| Roofs – use | 5 | 7 |
| Services – Lessor's obligations | 3 | 3 |
| Shares – |  |  |
| accompanying lease, specified | 2 | 1(b) |
| additional shares issued | 2 | 1(c) |
| all shares transferred on assignment | 7 | 16(a) |
| surrender on lease termination | 20 | 32(c) |
| Storage space | 16 | 29(b) |
| Subletting – |  |  |
| consent required | 7 | 15 |
| further subletting, new consent | 8 | 16(e) |
| rent – collection from subtenant | 20 | 32(b) |
| violation of restrictions | 18 | 31(c) |
| Subordination to mortgages and ground leases | 14 | 22 |
| Subrogation waiver – Lessor's obligations | 4 | 4(d) |
| Surrender of apartment – |  |  |
| lease expiration | 13 | 21(c) |
| lease termination | 21 | 34 |
| liability continues | 21 | 34 |
| Term of lease | 1 |  |
| Termination of lease – |  |  |
| conditional limitation | 17 | 31 |
| assignment unauthorized | 18 | 31(c) |
| bankruptcy of Lessee | 18 | 31(b) |
| condemnation | 19 | 31(i) |
| covenants breached | 18 | 31(e) |

iv

|  | PAGE | PAR. |
|---|---|---|
| Termination of lease - | | |
| default to lending institution............ | 19 | 31(g) |
| destruction of building.................. | 19 | 31(i) |
| occupancy unauthorized.................... | 18 | 31(c) |
| objectionable conduct..................... | 18 | 31(f) |
| rent default............................. | 18 | 31(d) |
| shares, Lessee ceases to own.............. | 18 | 31(a) |
| subletting unauthorized.................. | 18 | 31(c) |
| termination of all leases................. | 19 | 31(h) |
| Terrace - use and maintenance.............. | 5 | 7 |
| Third party occupant - Lessor's rights........ | 5 | 8 |
| Unsold Shares.............................. | 24 | 41 |
| Use of apartment - | | |
| as a dwelling............................ | 7 | 14 |
| compliance with requirements............. | 11 | 18(d) |
| insurance rate increase.................. | 12 | 20 |
| Waiver - | | |
| of subrogation, Lessor's obligation...... | 4 | 4(d) |
| no waiver by Lessor...................... | 15 | 26 |
| right of redemption, by Lessee........... | 21 | 33 |
| trial by jury............................ | 24 | 40 |
| Window cleaning........................... | 17 | 30 |

# PROPRIETARY LEASE

————————

PROPRIETARY LEASE, made as of March 20 , ~~198X~~ 2008 by and between 35-21 79 ST. TENANTS CORP.

New York corporation, having an office at 35-21 79th Street, Jackson Heights, New York, hereinafter called the Lessor, and Sean Murray ~~hereinafter called the Lessee.~~

Whereas the Lessor is the owner of the building, hereinafter called the building, and the land in the Borough of Queens known as and by the street number 35-21 79th Street, Jackson Heights, N.Y.

Whereas, the Lessee is the owner of ~439~ shares of the Lessor, to which this lease is appurtenant and which have been allocated to Apartment 4E in the building.

Now, Therefore in consideration of the premises, the Lessor hereby leases to the Lessee, and the Lessee hires from the Lessor, subject to terms and conditions hereof, Apartment 4E in the building (hereinafter referred to as the apartment) for a term from March 20, 2008 ~~198X~~ until September 30, 2085 (unless sooner terminated as hereinafter provided). As used herein "the apartment" means the rooms in the building as partitioned on the date of the execution of this lease designated by the above-stated apartment number, together with their appurtenances and fixtures and any closets, terraces, balconies, roof, or portion thereof outside of said partitioned rooms, which are allocated exclusively to the occupant of the apartment.

**Demised Premises**

**Term**

1. (a) The rent (sometimes called maintenance) payable by Lessee for each year, or portion of a year, during the term shall equal that proportion of the Lessor's cash requirements for such year, or portion of a year, which the number of shares of the Lessor allocated to the apartment bears to the total number of shares of the Lessor issued and outstanding on the date of the determination of such cash requirements. Such maintenance shall be payable in equal monthly installments in advance on the first day of each month, unless the Board of Directors of the Lessor (hereinafter called Directors) at the time of its determination of the cash requirements shall otherwise direct. The Lessee shall also pay such additional rent as may be provided for herein when due.

**Rent (Maintenance How Fixed**

(b) In every proprietary lease heretofore executed by the Lessor there has been specified, and in every proprietary lease hereafter executed by it there will be specified, the number of shares of the Lessor issued to a leasee simultaneously therewith.

**Accompanying Shares to be Specified in Proprietary Leases**

1

(c) "Cash requirements" whenever used herein shall mean the estimated amount in cash which the Directors shall from time to time in its judgment determine to be necessary or proper for (1) the operation maintenance care, alteration and improvement of the corporate property during the year or portion of the year for which such determination is made; (2) the creation of such reserve for contingencies as it may deem proper, and (3) the payment of any obligations, liabilities or expenses incurred or to be incurred, after giving consideration to (i) income expected to be received during such period (other than rent from proprietary leasees), and (ii) cash on hand which the Directors in its discretion may choose to apply. The Directors may from time to time modify its prior determination and increase or diminish the amount previously determined as cash requirements of the corporation for a year or portion thereof. No determination of cash requirements shall have any retroactive effect on the amount of the rent payable by the leasee for any period prior to the date of such determination. All determinations of cash requirements shall be conclusive as to all leasees.

<div align="right">Cash<br>Requirements<br>Defined</div>

(d) Whenever in this paragraph or any other paragraph of this lease, a power or privilege is given to the Directors, the same may be exercised only by the Directors, and in no event may any such power or privilege be exercised by a creditor, receiver or trustee.

<div align="right">Authority<br>Limited to<br>Board of<br>Directors</div>

(e) If the Lessor shall hereafter issue shares (whether now or hereafter authorized) in addition to those issued on the date of the execution of this lease, the holders of the shares hereafter issued shall be obligated to pay rent at the same rate as the other proprietary leasees from and after the date of issuance. If any such shares be issued on a date other than the first or last day of the month, the rent for the month in which issued shall be apportioned. The cash requirements as last determined shall, upon the issuance of such shares, be deemed increased by an amount equal to such rent.

<div align="right">Issuance of<br>Additional<br>Shares</div>

(f) The omission of the Directors to determine the Lessor's cash requirements for any year or portion thereof shall not be deemed a waiver of modification in any respect of the covenants and provisions hereof, or a release of the Lessee from the obligation to pay the maintenance or any installment thereof, but the maintenance computed on the basis of the cash requirements as last determined for any year or portion thereof shall thereafter continue to be the maintenance until a new determination of cash requirements shall be made.

<div align="right">Failure to<br>Fix Cash<br>Requirements</div>

2

-114-

2. The Lessor shall at its expense keep in good repair all of the building including all of the apartments, the sidewalks and courts surrounding the same, and its equipment and apparatus except those portions the maintenance and repair of which are expressly stated to be the responsibility of the Lessee pursuant to Paragraph 18 hereof.

<div style="text-align: right">Lessor's Repairs</div>

3. The Lessor shall maintain and manage the building as a first-class apartment building, and shall keep the elevators and the public halls, cellars and stairways clean and properly lighted and heated, and shall provide the number of attendants requisite, in the judgment of the Directors, for the proper care and service of the building, and shall provide the apartment with a proper and sufficient supply of hot and cold water and of heat, and if there be central air conditioning equipment supplied by the Lessor, air conditioning when deemed appropriate by the Directors. The covenants by the Lessor herein contained are subject, however, to the discretionary power of the Directors to determine from time to time what services and what attendants shall be proper and the manner of maintaining and operating the building, and also what existing services shall be increased, reduced, changed, modified or terminated.

4. (a) If the apartment or the means of access thereto or the building shall be damaged by fire or other cause covered by multiperil policies commonly carried by cooperative corporations in New York City (any other damage to be repaired by Lessor or Lessee pursuant to Paragraphs 2 and 18, as the case may be), the Lessor shall at its own cost and expense, with reasonable dispatch after receipt of notice of said damage, repair or replace or cause to be repaired or replaced, with materials of a kind and quality then customary in buildings of the type of the building, the building, the apartment, and the means of access thereto, including the walls, floors, ceilings, pipes, wiring and conduits in the apartment. Anything in this Paragraph or Paragraph 2 to the contrary, Lessor shall not be required to repair or replace, or cause to be repaired or replaced, equipment, fixtures, furniture, furnishings or decorations installed by the Lessee or any of his predecessors in title nor shall the Lessor be obligated to repaint or replace wallpaper or other decorations in apartments.

<div style="text-align: right">Damage to Apartment or Building</div>

(b) In case the damage resulting from fire or other cause be so extensive as to render the apartment partly or wholly un-tenantable, or if the means of access thereto shall be destroyed, the rent hereunder shall proportionately abate until the apartment shall again be rendered wholly tenantable or the means of access restored; but if said damage shall be caused by the act or negligence of the Lessee or the agents, employees, guests or members of the family of the Lessee or any occupant of the apartment, such rental shall abate only to the extent of the rental value insurance, if any, collected by Lessor with respect to the apartment.

<div style="text-align: right">Rent Abatement</div>

3

be changed by the approval of lessees owning at least 75% of the Lessor's shares then issued, and such changes shall be binding on all lessees even if they did not vote for such changes except that the proportionate share of rent or cash requirements payable by any lessee may not be increased nor may his right to cancel the lease under the conditions set forth in Paragraph 35 be eliminated or impaired without his express consent. Approval by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose.

7.    If the apartment includes a terrace, balcony, or a portion of the roof adjoining a penthouse, the Lessee shall have and enjoy the exclusive use of the terrace or balcony or that portion of the roof appurtenant to the penthouse, subject to the applicable provisions of this lease and to the use of the terrace, balcony or roof by the Lessor to the extent herein permitted. The Lessee's use thereof shall be subject to such regulations as may, from time to time, be prescribed by the Directors. The Lessor shall have the right to erect equipment on the roof, including radio and television aerials and antennas, for its use and the use of the lessees in the building and shall have the right of access thereto for such installations and for the repair thereof. The Lessee shall keep the terrace, balcony, or portion of the roof appurtenant to his apartment clean and free from snow, ice, leaves and other debris and shall maintain all screens and drain boxes in good condition. No planting, fences, structures or lattices shall be erected or installed on the terraces, balconies, or roof of the building without the prior written approval of the Lessor. No cooking shall be permitted on any terraces, balconies or the roof of the building, nor shall the walls thereof be painted by the Lessee without the prior written approval of the Lessor. Any planting or other structures erected by the Lessee or his predecessor in interest may be removed and restored by the Lessor at the expense of the Lessee for the purpose of repairs, upkeep or maintenance of the building.

*Penthouses Terraces and Balconies*

8.    If at the date of the commencement of this lease, any third party shall be in possession or have the right to possession of the apartment, then the Lessor hereby assigns to the Lessee all of the Lessor's rights against said third party from and after the date of the commencement of the term hereof, and the Lessee by the execution hereof assumes all of the Lessor's obligations to said third party from said date. The Lessor agrees to cooperate with the Lessee, but at the Lessee's expense, in the enforcement of the Lessee's rights against said third party.

*Assignment of Lessor's Right's Against Occupant*

9.    If at the date of the commencement of this lease, the Lessee has the right to possession of the apartment under any agreement or statutory tenancy, this lease shall supersede such

*Cancellation of Prior Agreements*

5

(c) If the Directors shall determine that (i) the building is totally destroyed by fire or other cause, or (ii) the building is so damaged that it cannot be repaired within a reasonable time after the loss shall have been adjusted with the insurance carriers, or (iii) the destruction or damage was caused by hazards which are not covered under the Lessor's insurance policies then in effect, and if in any such case the record holders of at least two-thirds of the issued shares, at a shareholders' meeting duly called for that purpose held within 120 days after the determination by the Directors, shall vote not to repair, restore or rebuild, then upon the giving of notice pursuant to Paragraph 31 hereof, this Lease and all other proprietary leases and all right, title and interest of the parties thereunder and the tenancies thereby created, shall thereupon wholly cease and expire and rent shall be paid to the date of such destruction or damage. The Lessee hereby waives any and all rights under Section 227 of the Real Property Law and in no event shall the Lessee have any option or right to terminate this Lease.

*Expiration of Lease Due Damage*

(d) Lessor agrees to use its best efforts to obtain a provision in all insurance policies carried by it waiving the right of subrogation against the Lessee; and, to the extent that any loss or damage is covered by the Lessor by any insurance policies which contain such waiver of subrogation, the Lessor releases the Lessee from any liability with respect to such loss or damage. In the event that the Lessee suffers loss or damage for which Lessor would be liable, and Lessee carries insurance which covers such loss or damage and such insurance policy or policies contain a waiver of subrogation against the Landlord, then in such event Lessee releases Lessor from any liability with respect to such loss or damage.

*Waiver of Subrogation*

5.  The Lessor shall keep full and correct books of account at its principal office or at such other place as the Directors may from time to time determine, and the same shall be open during all reasonable hours to inspection by the Lessee or a representative of the Lessee. The Lessor shall deliver to the Lessee within a reasonable time after the end of each fiscal year an annual report of corporate financial affairs, including a blance sheet and a statement of income and expenses, certified by an independent certified public accountant.

*Inspection of Books of Account*

*Annual Report*

6.  Each proprietary lease shall be in the form of this lease unless a variation of any lease is authorized by lessees owning at least two-thirds of the Lessor's shares then issued and executed by the Lessor and lessee affected. The form and provisions of all the proprietary leases then in effect and thereafter to be executed may

*Changes in Terms and Conditions of Proprietary Leases*

4

agreement or statutory tenancy which shall be of no further effect after the date of commencement of this lease, except for claims theretofore arising thereunder.

10. The Lessee, upon paying the rent and performing the covenants and complying with the conditions on the part of the Lessee to be performed as herein set forth, shall, at all times during the term hereby granted, quietly have, hold and enjoy the apartment without any let, suit, trouble or hindrance from the Lessor, subject, however, to the rights of present tenants or occupants of the apartment, and subject to any and all mortgages and underlying leases of the land and building.

*Quiet Enjoyment*

11. The Lessee agrees to save the Lessor harmless from all liability, loss, damage and expense arising from injury to person or property occasioned by the failure of the Lessee to comply with any provision hereof, or due wholly or in part to any act, default or omission of the Lessee or of any person dwelling or visiting in the apartment, or by the Lessor, its agents, servants or contractors when acting as agent for the Lessee as in this lease provided. This paragraph shall not apply to any loss or damage when Lessor is covered by insurance which provides for waiver of subrogation against the Lessee.

*Indemnity*

12. The Lessee will pay the rent to the Lessor upon the terms and at the times herein provided, without any deduction on account of any set-off or claim which the Lessee may have against the Lessor, and if the Lessee shall fail to pay any installment of rent promptly, the Lessee shall pay interest thereon at the maximum legal rate from the date when such installment shall have become due to the date of the payment thereof, and such interest shall be deemed additional rent hereunder.

*Payment of Rent*

13. The Lessor has adopted House Rules which are appended hereto, and the Directors may alter, amend or repeal such House Rules and adopt new House Rules. This lease shall be in all respects subject to such House Rules which, when a copy thereof has been furnished to the Lessee, shall be taken to be part hereof, and the Lessee hereby covenants to comply with all such House Rules and see that they are faithfully observed by the family, guests, employees and subtenants of the Lessee. Breach of a House Rule shall be a default under this lease. The Lessor shall not be responsible to the Lessee for the nonobservance or violation of House Rules by any other lessee or person.

*House Rules*

14. The Lessee shall not, without the written consent of the Lessor on such conditions as Lessor may prescribe, occupy or use the apartment or permit the same or any part thereof to be occupied or used for any purpose other than as a private dwelling for the Lessee and Lessee's spouse, their children, grandchildren, parents, grandparents, brothers and sisters and domestic employees, and in no event shall more than one married couple occupy the apartment without the written consent of the Lessor. In addition to the foregoing, the apartment may be occupied from time to time by guests of the Lessee for a period of time not exceeding one month, unless a longer period is approved in writing by the Lessor, but no guests may occupy the apartment unless one or more of the permitted adult residents are then in occupancy or unless consented to in writing by the Lessor.

**Use of Premises**

15. Except as provided in Paragraphs 38 and 42 of this lease, the Lessee shall not sublet the whole or any part of the apartment or renew or extend any previously authorized sublease, unless consent thereto shall have been duly authorized by a resolution of the Directors, or given in writing by a majority of the Directors or, if the Directors shall have failed or refused to give such consent, then by lessees owning at least 65% of the then issued shares of the Lessor. Consent by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose. Any consent to subletting may be subject to such conditions as the Directors or lessees, as the case may be, may impose. There shall be no limitation on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to a subletting.

**Subletting**

16. Except as provided in Paragraphs 38 and 42 of this lease,

**Assignment**

(a) The Lessee shall not assign this lease or transfer the shares to which it is appurtenant or any interest therein and no such assignment or transfer shall take effect as against the Lessor for any purpose, until

(i)   An instrument of assignment in form approved by Lessor executed and acknowledged by the assignor shall be delivered to the Lessor and

(ii)  An agreement executed and acknowledged by the assignee in form approved by Lessor assuming and agreeing to be bound by all the covenants and conditions of this lease to be performed or complied with by the Lessee on and after the effective date of said assignment shall have been delivered to the Lessor, or, at the request of the Lessor, the assignee shall have surrendered the assigned lease and entered into a new lease in the same form for the remainder of the term, in which case the Lessee's lease shall be deemed cancelled as of the effective date of said assignment; and

7

unreasonably withheld, make in the apartment or building or on any roof, penthouse, terrace or balcony appurtenant thereto, any alteration, enclosure or additon or any alteration of or addition to the water, gas, or steam risers or pipes, heating or air conditioning system or units, electrical conduits, wiring or outlets, plumbing, fixtures, intercommunication or alarm system, or any other installation or facility in the apartment or building. The performance by Lessee of any work in the apartment shall be in accordance with any applicable rules and regulations of the Lessor and governmental agencies having jurisdiction thereof. The Lessee shall not in any case install any appliances which will overload the existing wires or equipment in the building.

(b)  Without Lessor's written consent, the Lessee shall not remove any fixtures, appliances, additions or improvements from the apartment except as hereinafter provided.  If the Lessee, or a prior lessee, shall have heretofore placed, or the Lessee shall hereafter place in the apartment, at the Lessee's own expense, any additions, improvements, appliances or fixtures, including but not limited to fireplace mantels, lighting fixtures, refrigerators, air conditioners, dishwashers, washing machines, ranges, woodwork, wall paneling, ceilings, special doors or decorations, special cabinet work, special stair railings or other built-in ornamental items, which can be removed without structural alterations or permanent damage to the apartment, then title thereto shall remain in the Lessee and the Lessee shall have the right, prior to the termination of this lease, to remove the same at the Lessee's own expense, provided: (i) that the Lessee at the time of such removal shall not be in default in the payment of rent or in the performance or observance of any other covenants or conditions of this lease; and (ii) that the Lessee shall, at the Lessee's own expense, prior to the termination of this lease, repair all damage to the apartment which shall have been caused by either the installation or removal of any of such additions, improvements, appliances or fixtures; (iii) that if the Lessee shall have removed from the apartment any articles or materials owned by the Lessor or its apartment, the Lessee shall either restore such articles and materials and fixtures and equipment and repair any damage resulting from their removal and restoration, or replace them with others of a kind and quality customary in comparable buildings and satisfactory to the Lessor; and (iv) that if any mortgagee had acquired a lien on any such property prior to the execution of this lease, Lessor shall first procure from such mortgagee its written consent to such removal.

(c)  On the expiration or termination of this lease, the Lessee shall surrender to the Lessor possession of the apartment with all additions, improvements, appliances and fixtures then included therein, except as hereinabove provided.  Any additions, improvements, fixtures or appliances not removed by the Lessee on or before such expiration or termination of this lease shall, at the

*Removal of Fixtures*

*Surrender on Expiration of Term*

13

any provisions pertaining to the right of the Lessee to make changes or alterations in the apartment, or to remove any of the fixtures, appliances, equipment or installations, the Lessee herein shall comply with the requirements of such mortgage or mortgages relating thereto. Upon the Lessee's written request, Lessor will furnish Lessee with copies of applicable provisions of each and every such mortgage.

19. If the Lessee shall fail for 30 days after notice to make repairs to any part of the apartment, its fixtures or equipment as herein required, or shall fail to remedy a condition which has become objectionable to the Lessor for reasons above set forth, or if the Lessee or any person dwelling in the apartment shall request the Lessor, its agents or servants to perform any act not hereby required to be performed by the Lessor, the Lessor may make such repairs, or arrange for others to do the same, or remove such objectionable condition or equipment, or perform such act, without liability on the Lessor; provided that, if the condition requires prompt action, notice of less than 30 days or, in case of emergency, no notice need be given. In all such cases the Lessor, its agents, servants and contractors shall, as between the Lessor and Lessee, be conclusively deemed to be acting as agents of the Lessee and all contracts therefor made by the Lessor shall be so construed whether or not made in the name of the Lessee. If Lessee shall fail to perform or comply with any of the other covenants or provisions of this lease within the time required by a notice from Lessor (not less than 5 days), then Lessor may, but shall not be obligated, to comply therewith, and for such purpose may enter upon the apartment of Lessee. The Lessor shall be entitled to recover from the Lessee all expenses incurred or for which it has contracted hereunder, such expenses to be payable by the Lessee on demand as additional rent.

*Lessor's Right to Remedy Lessee's Defaults*

20. The Lessee shall not permit or suffer anything to be done or kept in the apartment which will increase the rate of fire insurance on the building or the contents thereof. If, by reason of the occupancy or use of the apartment by the Lessee, the rate of fire insurance on the building or an apartment or the contents of either shall be increased, the Lessee shall (if such occupancy or use continues for more than 30 days after written notice from the Lessor specifying the objectionable occupancy or use) become liable for the additional insurance premiums incurred by Lessor or any lessee or lessees of apartments in the building on all policies so affected, and the Lessor shall have the right to collect the same for its benefit or the benefit of any such lessees as additional rent for the apartment due on the first day of the calendar month following written demand thereof by the Lessor.

*Increase in Rate of Fire Insurance*

21. (a) The Lessee shall not, without first obtaining the written consent of the Lessor, which consent shall not be

*Alterations*

12

-124-

18.  (a)  The Lessee shall keep the interior of the apart-
ment (including interior walls, floors and ceilings, but excluding
windows, window panes, window frames, sashes, sills, entrance and
terrace doors, frames and saddles) in good repair, shall do all of
the painting and decorating required for his apartment, including
the interior of window frames, sashes and sills, and shall be solely
responsible for the maintenance, repair, and replacement of
plumbing, gas and heating fixtures and equipment and such
refrigerators, dishwashers, removable and through-the-wall air
conditioners, washing machines, ranges and other applicances, as may
be in the apartment.  Plumbing, gas and heating fixtures as used
herein shall include exposed gas, steam and water pipes attached to
fixtures, appliances and equipment and the fixtures, appliances and
equipment to which they are attached, and any special pipes or
equipment which the Lessee may install within the wall or ceiling,
or under the floor, but shall not include gas, steam, water or other
pipes or conduits within the walls, ceilings or floors or air
conditioning or heating equipment which is part of the standard
building equipment.  The Lessee shall be solely responsible for the
maintenance, repair and replacement of all lighting and electrical
fixtures, appliances, and equipment, and all meters, fuse boxes or
circuit breakers and electrical wiring and conduits from the
junction box at the riser into and through the Lessee's apartment.
Any ventilator or air conditioning device which shall be visible
from the outside of the building shall at all times be painted by
the Lessee in a standard color which the Lessor may select for the
building.

**Repairs by
the Lessee**

(b)  The Lessee shall not permit unreasonable cooking or
other odors to escape into the building.  The Lessee shall not permit
or suffer any unreasonable noises or anything which will interfere
with the rights of other lessees or unreasonably annoy them or
obstruct the public halls or stairways.

**Odors and
Noises**

(c)  If, in the Lessor's sole judgment, any of the
Lessee's equipment or appliances shall result in damage to the
building or poor quality or interruption of service to other
portions of the building, or overloading of, or damage to facilities
maintained by the Lessor for the supplying of water, gas,
electricity or air conditioning to the building, or if any such
appliances visible from the outside of the building shall become
rusty or discolored, the Lessee shall promptly, on notice from the
Lessor, remedy the condition and, pending such remedy, shall cease
using any appliance or equipment which may be creating the
objectionable condition.

**Equipment
and
Appliances**

(d)  The Lessee will comply with all the requirements
of the Board of Fire Underwriters, insurance authorities and all
governmental authorities and with all laws, ordinances, rules and
regulations with respect to the occupancy or use of the apartment.
If any mortgage affecting the land or the building shall contain

**Rules and
Regulations
and
Requirements
of Mortgage**

11

proceedings against the Lessee and take all steps and do all acts thereafter required in order to obtain possession of the apartment, all at the expense of the Lender, provided, however, that the Lender shall meanwhile pay all maintenance charges and other charges becoming due hereunder for the account of the Lessee until this Lease and shares allocated to the apartment are acquired for personal occupancy.

If Lessor shall fail to exercise its right to terminate and/or to commence summary proceedings or to take all steps or do all acts required to be done pursuant hereto, then and in that event, Lessor shall execute and deliver to the Lender a power of attorney coupled with an interest to act in the name of the Lessor in any of the ways provided for herein at the Lender's sole expense, and if the Lessor shall fail to execute and deliver such power of attorney within five days after demand, such power of attorney may be executed by the Lender on behalf of and as the agent for the Lessor. The Lessee agrees that until any such loan is repaid to the Lender in full with interest, the Lessee shall not have any right to cancel this lease as provided in Paragraph 35 hereof, and the Lessor agrees that until it receives written notice from the Lender that the entire amount of the loan with interest has been paid in full or discharged, the Lessor will not accept any surrender of this Lease by the Lessee under Paragraph 35 hereof.

If this lease is terminated at the Lender's request by reason of a default by the Lessee in any of the terms, covenants, provisions or in the payment to the Lender of any installment of principal or interest or in the performance of any other obligation of the Lessee to the Lender, the Lender may sell and assign the shares of the Lessor allocated to the apartment and this Lease, or sublet the apartment, for the account of the Lender to a reputable person of good financial standing subject only to the approval of the then Managing Agent of the Lessor, which approval shall not be unreasonably withheld. If written notice of any such loan has been given to the Lessor by the Lender as aforesaid, the Lender may assign all its rights thereto and to the shares of Lessor allocated to the apartment and this lease by giving written notice to the Lessor by certified or registered mail setting forth the name and address of the assignee, and such assignee and any subsequent assignee or assignees shall thereupon have all the rights of the Lender under this Paragraph 17.

Notwithstanding anything to the contrary contained in the within lease the Lessor will not make or consent to any change or alteration in the terms or conditions of any paragraph of the lease pertaining to the rights of a lender without the consent of the Lender.

10

entitled further to assign this lease, or to sublet the apartment, or any part thereof, except upon compliance with the requirements of this lease.

(f)  If this lease is then in force and effect, Lessor will, upon request of Lessee, deliver to the assignee a written statement that this lease remains on the date thereof in force and effect; but no such statement shall be deemed an admission that there is no default under the lease.

*Statement by Lessor*

(g)  If the purchase by the Lessee of the shares accompanying this Proprietary Lease was financed, the Lessor agrees to withhold consent to any assignment by the Lessee or a subletting of the Apartment unless such assignment or subletting is accompanied by the written consent of the Lender.

*Consent by Lender*

17.  The Lessee may pledge and assign this Lease and the shares of the Lessor allocated to the Apartment as security for a loan made to the Lessee by a bank, trust company, insurance company or other recognized lending institution (the "Lender"), for any purpose whatsoever, provided, however, that the certificate representing the shares allocated to the Apartment and this Lease may be assigned to the Lender only as security for repayment of the loan.  The "Lender" may include the seller or any third party when the pledge and assignment is for the purpose of purchasing the shares allocated to the apartment and this Lease and said shares are assigned to the Lender only as security for the repayment of the Loan.

*Pledge of Shares and Lease*

In the event of a default by the Lessee in any of the terms, covenants, provisions or conditions of this Lease, the Lessor will give written notice thereof to the Lender if written notice of the name and address of the Lender has been given by registered or certified mail to the Lessor prior to the date of any such default. If the Lessee shall fail to cure said default within the time and in the manner provided for in this Lease, then the Lender shall have an additional period of time equal to the time originally given to the Lessee to cure said default, and the Lessor will not act upon said default until the time of the Lender to cure said default has elapsed and the Lender has not cured said default.

In the event of a default by the Lessee in any of the terms, covenants, provisions or conditions of this Lease, or in the payment to the Lender of any installment of principal or interest or in the performance of any other obligation of the Lessee to the Lender, the Lessor after written notice thereof from the Lender will exercise the right of termination of this Lease granted to the Lessor pursuant to Paragraph 31 hereof, and if the Lessee shall fail to vacate the apartment, will institute summary dispossess

9

(iii)  All shares of the Lessor to which this lease is appurtenant shall have been transferred to the assignee, with proper transfer taxes paid and stamps affixed; and

(iv)  All sums due from the Lessee shall have been paid to the Lessor, together with a sum to be fixed by the Directors to cover reasonable legal and other expenses of the Lessor and its managing agent in connection with such assignment and transfer of shares; and

(v)  A search or certification from a title or abstract company as the Directors may require; and

(vi)  Except in the case of an assignment, transfer or bequest to the Lessee's spouse, of the shares and this lease, and except as provided in Paragraph 38 of this lease, consent to such assignment shall have been authorized by resolution of the Directors, or given in writing by a majority of the Directors; or, if the Directors shall have failed or refused to give such consent within 30 days after submission of references to them or Lessor's agent, then by lessees owning of record at least 65% of the then issued shares of the Lessor.  Consent by lessees as provided for herein shall be evidenced by written consent or by affirmative vote taken at a meeting called for such purpose in the manner as provided in the by-laws.

(b)  If the Lessee shall die, consent shall not be unreasonably withheld to an assignment of the lease and shares to a financially responsible member of the Lessee's family (other than the Lessee's spouse as to whom no consent is required).

**Consents:
On Death of
Lessee**

(c)  There shall be no limitation, except as above specifically provided, on the right of Directors or lessees to grant or withhold consent, for any reason or for no reason, to an assignment.

**Consents
Generally:
Stockholders
& Directors'
Obligations
to Consent**

(d)  If the lease shall be assigned in compliance herewith, the Lessee-assignor shall have no further liability on any of the covenants of this lease to be thereafter performed.

**Release of
Lessee Upon
Assignment**

(e)  Regardless of any prior consent theretofore given, neither the Lessee nor his executor, nor administrator, nor any trustee or receiver of the property of the Lessee, nor anyone

**Further
Assignment
or
Subletting**

8

option of the Lessor, be deemed abandoned and shall become the property of the Lessor and may be disposed of by the Lessor without liability or accountability to the Lessee.

22. This lease is and shall be subject and subordinate to all present and future ground or underlying leases and to any mortgages now or hereafter liens upon such leases or on the land and building, or buildings, and to any and all extensions, modifications, consolidations, renewals and replacements thereof. This clause shall be self-operative and no further instrument of subordination shall be required by any such mortgagee or ground or underlying leases. In confirmation of such subordination the Lessee shall at any time, and from time to time, on demand, execute any instruments that may be required by any mortgagee, or by the Lessor, for the purpose of more formally subjecting this lease to the lien of any such mortgage or mortgages or ground or underlying leases, and the duly elected officers, for the time being, of the Lessor are and each of them is hereby irrevocably appointed the attorney-in-fact and agent of the Lessee to execute the same upon such demand, and the Lessee hereby ratifies any such instrument hereafter executed by virtue of the power of attorney hereby given.

In the event that a ground or underlying lease is executed and delivered to the holder of a mortgage or mortgages on such ground or underlying lease or to a nominee or designee of or a corporation formed by or for the benefit of such holder, the Lessee hereunder will attorn to such mortgages or the nominee or designee of such mortgagee or to any corporation formed by or for the benefit of such mortgagee.

23. In case a notice of mechanic's lien against the building shall be filed purporting to be for labor or material furnished or delivered at the building or the apartment to or for the Lessee, or anyone claiming under the Lessee, the Lessee shall forthwith cause such lien to be discharged by payment, bonding or otherwise; and if the Lessee shall fail to do so within ten days after notice from the Lessor, then the Lessor may cause such lien to be discharged by payment, bonding or otherwise, without investigation as to the validity thereof or of any offsets or defenses thereto, and shall have the right to collect, as additional rent, all amounts so paid and all costs and expenses paid or incurred in connection therewith, including reasonable attorneys' fees and disbursements, together with interest thereon from the time or times of payment.

*[right margin:]* Lease Subordinate to Mortgages and Ground Leases

*[right margin:]* Mechanic's Lien

14

24.  The Lessee shall always in good faith endeavor to observe    **Cooperation**
and promote the cooperative purposes for the accomplishment of which
the Lessor is incorporated.

25.  The Lessor and its agents and their authorized workmen    **Right of**
shall be permitted to visit, examine, or enter the apartment and any    **Entry**
storage space assigned to Lessee at any reasonable hour of the day
upon notice, or at any time and without notice in case of emergency,
to make or facilitate repairs in any part of the building or to cure
any default by the Lessee and to remove such portions of the walls,
floors and ceilings of the apartment and storage space as may be
required for any such purpose, but the Lessor shall thereafter
restore the apartment and storage space to its proper and usual
condition at Lessor's expense if such repairs are the obligation of
Lessor, or at Lessee's expense if such repairs are the obligation of
Lessee, or are caused by the act or omission of the Lessee or any of
the Lessee's family, guests, agents, employees or subtenants.  In
order that the Lessor shall at all times have access to the
apartment or storage rooms for the purposes provided for in this
lease, the Lessee shall provide the Lessor with a key to each lock    **Key**
providing access to the apartment or the storage rooms, and if any
lock shall be altered or new lock installed, the Lessee shall
provide the Lessor with a key thereto immediately upon
installation.  If the Lessee shall not be personally present to open
and permit an entry at any time when an entry therein shall be
necessary or permissible hereunder and shall not have furnished a
key to Lessor, the Lessor or the Lessor's agents (but, except in an
emergency, only when specifically authorized by an officer of the
Lessor or an officer of the Managing Agent) may forcibly enter the
apartment or storage space without liability for damages by reason
thereof (if during such entry the Lessor shall accord reasonable
care to the Lessee's property), and without in any manner affecting
the obligations and covenants of this lease.  The right and
authority hereby reserved do not impose, nor does the Lessor assume
by reason thereof, any responsibility or liability for the care or
supervision of the apartment, or any of the pipes, fixtures,
appliances or appurtenances therein contained, except as herein
specifically provided.

26.  The failure of the Lessor to insist, in any one or more    **Waivers**
instances, upon a strict performance of any of the provisions of
this lease, or to exercise any right or option herein contained, or
to serve any notice, or to institute any action or proceeding, shall
not be construed as a waiver, or a relinquishment for the future, of
any such provisions, options or rights, but such provision, option
or right shall continue and remain in full force and effect.  The
receipt by the Lessor of rent, with knowledge of the breach of any
covenant hereof, shall not be deemed a waiver of such breach, and no
waiver by the Lessor of any provision hereof shall be deemed to have
been made unless in a writing expressly approved by the Directors.

15

27.  Any notice by or demand from either party to the other shall be duly given only if in writing and sent by registered mail: if by the Lessee, addressed to the Lessor at the building with a copy sent by regular mail to the Lessor's Managing Agent; if to the Lessee, addressed to the building.  Either party may by notice served in accordance herewith designate a different address for service of such notice or demand.  Notices or demands shall be deemed given on the date when mailed.
*or certified

**Notices**

28.  If the Lessee shall at any time be in default hereunder and the Lessor shall incur any expense (whether paid or not) in performing acts which the Lessee is required to perform, or in instituting any action or proceeding based on such default, or defending, or asserting a counterclaim in, any action or proceeding brought by the Lessee, the expense thereof to the Lessor, including reasonable attorneys' fees and disbursements, shall be paid by the Lessee to the Lessor, on demand, as additional rent.

**Reimburse- ment of Lessor's**

29.  (a)  The Lessor shall not be liable, except by reason of Lessor's negligence, for any failure or insufficiency of heat, or of air conditioning (where air conditioning is supplied or air conditioning equipment is maintained by the Lessor), water supply, electric current, gas, telephone, or elevator service or other service to be supplied by the Lessor hereunder, or for interference with light, air view or other interests of the Lessee.  No abatement of rent or other compensation or claim of eviction shall be made or allowed because of the making or failure to make or delay in making any repairs, alterations or decorations to the building, or any fixtures or appurtenances therein, or for space taken to comply with any law, ordinance or governmental regulation, or for interruption or curtailment of any service agreed to be furnished by the Lessor, due to accidents, alterations or repairs, or to difficulty or delay in securing supplies or labor or other cause beyond Lessor's control, unless due to Lessor's negligence.

**Lessor's Immunities**

(b)  If the Lessor shall furnish to the Lessee any storage bins or space, the use of the laundry, or any facility outside the apartment, including but not limited to a television antenna, the same shall be deemed to have been furnished gratuitously by the Lessor under a revocable license.  The Lessee shall not use such storage space for the storage of valuable or perishable property and any such storage space assigned to Less shall be kept by Lessee clean and free of combustibles.  If washing machines or other equipment are made available to the Lessee, the Lessee shall use the same on the understanding that such machines or equipment may or may not be in good order and repair and that

**Storage Space and Laundry**

16

the Lessor is not responsible for such equipment, nor for any damage caused to the property of the Lessee resulting from the Lessee's use thereof, and that any use that Lessee may make of such equipment shall be at his own cost, risk and expense.

(c)  The Lessor shall not be responsible for any damage to any automobile or other vehicle left in the care of any employee of the Lessor by the Lessee, and the Lessee hereby agrees to hold the Lessor harmless from any liability arising from any injury to person or property caused by or with such automobile or other vehicle while in the care of such employee.  The Lessor shall not be responsible for any property left with or entrusted to any employee of the Lessor, or for the loss of or damage to any property within or without the apartment by theft or otherwise.

<div style="float:right">Automobiles and Other Property</div>

30.  The Lessee will not require, permit, suffer or allow the cleaning of any window in the premises from the outside (within the meaning of Section 202 of the New York Labor Law) unless the equipment and safety devices required by law, ordinance, rules and regulations, including, without limitation, Section 202 of the New York Labor Law, are provided and used, and unless the industrial code of the State of New York is fully complied with; and the Lessee hereby agrees to indemnify the Lessor and its employees, other lessees and the managing agent for all losses, damages or fines suffered by them as a result of the Lessee's requiring, permitting, suffering or allowing any window in the premises to be cleaned from the outside in violation of the requirements of the aforesaid laws, ordinances, regulations and rules.

<div style="float:right">Window Cleaning</div>

31.  If upon, or at any time after, the happening of any of the events mentioned in subdivisions (a) to (j) inclusive of this Paragraph 31, the Lessor shall give to the Lessee a notice stating that the term hereof will expire on a date at least five days thereafter, the term of this lease shall expire on the date so fixed in such notice as fully and completely as if it were the date herein definitely fixed for the expiration of the term, and all right, title and interest of the Lessee hereunder shall thereupon wholly cease and expire, and the Lessee shall thereupon quit and surrender the apartment to the Lessor, it being the intention of the parties hereto to create hereby a conditional limitation, and thereupon the Lessor shall have the right to re-enter the apartment and to remove all persons and personal property therefrom, either by summary dispossess proceedings, or by any suitable action or proceeding at law or in equity, or by force or otherwise, and to repossess the apartment in its former state as if this lease had not been made, and no liability whatsoever shall attach to the Lessor by reason of the exercise of the right of re-entry, re-possession and removal herein granted and reserved:

<div style="float:right">Termination of Lease by Lessor</div>

<div style="text-align:center">17</div>

(a)  If the Lessee shall cease to be the owner of the shares to which this lease is appurtenant, or if this lease shall pass to anyone who is not then the owner of all of said shares;

Lessee Ceasing to Own Accompanying Shares

(b)  If at any time during the term of this lease (i) the then holder hereof shall be adjudicated a bankrupt under the laws of the United States; or (ii) a receiver of all of the property of such holder or of this lease shall be appointed under any provision of the laws of the State of New York, or under any statute of the United States, or any statute of any state of the United States and the order appointing such receiver shall not be vacated within thirty days; or (iii) such holder shall make a general assignment for the benefit of creditors; or (iv) any of the shares owned by such holder to which this lease is appurtenant shall be duly levied upon under the process of any court whatever unless such levy shall be discharged within thirty days; or (v) this lease or any of the shares to which it is appurtenant shall pass by operation of law or otherwise to anyone other than the Lessee herein named or a person to whom such Lessee has assigned this lease in the manner herein permitted, but this subsection (v) shall not be applicable if this lease shall devolve upon the executors or administrators of the Lessee and provided that within eight (8) months (which period may be extended by the Directors) after the death said lease and shares shall have been transferred to any assignee in accordance with Paragraph 16 hereof;

Lessee Becoming a Bankrupt

(c)  If there be an assignment of this lease, or any sub-letting hereunder, without full compliance with the requirements of Paragraphs 15 or 16 hereof; or if any person not authorized by Paragraph 14 shall be permitted to use or occupy the apartment, and the Lessee shall fail to cause such unauthorized person to vacate the apartment within ten days after written notice from the Lessor;

Assignment, Subletting or Unauthorized Occupancy

(d)  If the Lessee shall be in default for a period of one month in the payment of any rent or additional rent or of any install-ment thereof and shall fail to cure such default within ten days after written notice from the Lessor;

Default in Rent

(e)  If the Lessee shall be in default in the performance of any covenant or provision hereof, other than the covenant to pay rent, and such default shall continue for thirty days after written notice from the Lessor;

Default in Other Covenants

(f)  If at any time the Lessor shall determine, upon the af-firmative vote of two-thirds of its then Board of Directors, at a meeting duly called for that purpose, that because of objectionable conduct on the part of the Lessee, or of a person dwelling or visiting in the apartment, repeated after written notice from Lessor, the tenancy of the Lessee is undesirable;

Objectionable Conduct

18

(g)  If the purchase by the Lessee of the shares accompanying this proprietary lease was financed, and an Event of Default shall occur pursuant to the terms of the Agreement entered into between the Lessee and the Lender and notice of said Event of Default shall be given to the Lessor;

*Default in Financing*

(h)  If at any time the Lessor shall determine, upon the affirmative vote of two-thirds of its then Board of Directors at a meeting of such directors duly called for that purpose, and the affirmative vote of the record holders of at least 75% in amount of its then issued shares, at a shareholders meeting duly called for that purpose, to terminate all proprietary leases;

*Termination of All Proprietary Leases*

(i)  If the building shall be destroyed or damaged and the shareholders shall decide not to repair or rebuild as provided in Paragraph 4;

*Destruction of Building*

(j)  If at any time the building or a substantial portion thereof shall be taken by condemnation proceedings.

*Condemnation*

32.  (a) In the event the Lessor resumes possession of the apartment, either by summary proceedings, action of ejectment or otherwise, because of default by the Lessee in the payment of any rent or additional rent due hereunder, or on the expiration of the term pursuant to a notice given as provided in Paragraph 31 hereof upon the happening of any event specified in subsections (a) to (g) inclusive of Paragraph 31, Lessee shall continue to remain liable for payment of a sum equal to the rent which would have become due hereunder and shall pay the same in installments at the time such rent would be due hereunder.  No suit brought to recover any installment of such rent or additional rent shall prejudice the right of the Lessor to recover any subsequent installment.  After resuming possession, the Lessor may, at its option, from time to time (i) relet the apartment for its own account, or (ii) relet the apartment as the agent of the Lessee, in the name of the Lessee or in its own name, for a term or terms which may be less than or greater than the period which would otherwise have constituted the balance of the term of this lease, and may grant concessions or free rent, in its discretion.  Any reletting of the apartment shall be deemed for the account of the Lessee, unless within ten days after such reletting the Lessor shall notify the Lessee that the premises have been relet for the Lessor's own account.  The fact that the Lessor may have relet the apartment as agent for the Lessee shall not prevent the Lessor from thereafter notifying the Lessee that it proposes to relet the apartment for its own account.  If the Lessor relets the apartment as agent for the Lessee, it shall, after reimbursing itself for its expenses in connection therewith, including leasing commissions and a reasonable amount for attorneys' fees and expenses, and decorations, alterations and repairs in and to the apartment, apply the remaining avails of such reletting

*Lessor's Rights After Lessee's Default*

19

against the Lessee's continuing obligations hereunder. There shall be a final accounting between the Lessor and the Lessee upon the earliest of the four following dates: (A) the date of expiration of the term of this lease as stated on page 1 hereof; (B) the date as of which a new proprietary lease covering the apartment shall have become effective; (C) the date the Lessor gives written notice to the Lessee that it has relet the apartment for its own account; (D) the date upon which all proprietary leases of the Lessor terminate. From and after the date upon which the Lessor becomes obligated to account to the Lessee, as above provided, the Lessor shall have no further duty to account to the Lessee for any avails of reletting and the Lessee shall have no further liability for sums thereafter accruing hereunder, but such termination of the Lessee's liability shall not affect any liabilities theretofore accrued.

(b) If the Lessee shall at any time sublet the apartment and shall default in the payment of any rent or additional rent, the Lessor may, at its option, so long as such default shall continue, demand and receive from the subtenant the rent due or becoming due from such subtenant to the Lessee, and apply the amount to pay sums due and to become due from the Lessee to the Lessor. Any payment by a subtenant to the Lessor shall constitute a discharge of the obligation of such subtenant to the Lessee, to the extent of the amount so paid. The acceptance of rent from any subtenant shall not be deemed a consent to or approval of any subletting or assignment by the Lessee, or a release or discharge of any of the obligations of the Lessee hereunder.

**Collection of Rent from Subtenants**

(c) Upon the termination of this lease under the provisions of subdivisions (a) to (g) inclusive of Paragraph 31, the Lessee shall surrender to the corporation the certificate for the shares of the corporation owned by the Lessee to which this lease is appurtenant. Whether or not said certificate is surrendered, the Lessor may issue a new proprietary lease for the apartment and issue a new certificate for the shares of the Lessor owned by the Lessee and allocated to the apartment when a purchaser therefor is obtained, provided that the issuance of such shares and such lease to such purchaser is authorized by a resolution of the Directors, or by a writing signed by a majority of the Directors or by lessees owning, of record, at least a majority of the shares of the Lessor accompanying proprietary leases then in force. Upon such issuance the certificate owned or held by the Lessee shall be automatically cancelled and rendered null and void. The Lessor shall apply the proceeds received for the issuance of such shares towards the payment of the Lessee's indebtedness hereunder, including interest, attorneys' fees and other expenses incurred by the Lessor, and, if the proceeds are sufficient to pay the same, the Lessor shall pay over any surplus to the Lessee, but, if insufficient, the Lessee shall remain liable for the balance of the indebtedness. Upon the issuance of any such new proprietary lease and certificate, the Lessee's liability hereunder shall cease and the Lessee shall only

**Sale of Shares**

20

be liable for rent and expenses accrued to that time. The Lessor shall not, however, be obligated to sell such shares and appurtenant lease or otherwise make any attempt to mitigate damages.

33. The Lessee hereby waives any and all right of redemption in case the Lessee shall be dispossessed by judgment or warrant of any court or judge. The words "enter", "re-enter" and "re-entry" as used in this lease are not restricted to their technical legal meaning.

<div style="float:right">Waiver of<br>Right of<br>Redemptic</div>

34. Upon the termination of this lease under the provisions of subdivisions (a) to (g) inclusive of Paragraph 31, the Lessee shall remain liable as provided in Paragraph 32 of this lease. Upon the termination of this lease under any other of its provisions, the Lessee shall be and remain liable to pay all rent, additional rent and other charges due or accrued and to perform all covenants and agreements of the Lessee up to the date of such termination. On or before any such termination the Lessee shall vacate the apartment and surrender possession thereof to the Lessor or its assigns, and upon demand of the Lessor or its assigns, shall execute, acknowledge and deliver to the Lessor or its assigns any instrument which may reasonably be required to evidence the surrendering of all estate and interest of the Lessee in the apartment, or in the building of which it is a part.

<div style="float:right">Surrender<br>Possessic</div>

35. (a) This lease may be cancelled by the Lessee on any September 30th after the third anniversary of the consummation of the Offering Plan of Cooperative Organization pursuant to which proprietary leases were originally issued, upon complying with all the provisions hereinafter set forth. Irrevocable written notice of intention to cancel must be given by the Lessee to the Lessor on or before April 1 in the calendar year in which such cancellation is to occur. At the time of the giving of such notice of intention to cancel there must be deposited with the Lessor by the Lessee:

<div style="float:right">Lessee's<br>Option to<br>Cancel</div>

(i) The Lessee's counterpart of this lease with a written assignment form required by the Lessor, in blank, effective as of August 31 of the year of cancellation, free from all subleases, tenancies, liens, encumbrances and other charges whatsoever;

<div style="float:right">Deposits<br>Required</div>

(ii) the Lessee's certificate for his shares of the Lessor, endorsed in blank for transfer and with all necessary transfer tax stamps affixed and with payment of any transfer taxes due thereon;

(iii) a written statement setting forth in detail those additions, improvements, fixtures or equipment which the Lessee has, under the terms of this lease, the right to and intends to remove.

21

If the purchase of the shares accompanying this proprietary lease was financed, and the Lessee elects to avail himself of the right to terminate and cancel the proprietary lease, as more particularly provided for herein, then the Lessor shall give notice thereof to the Lender and, if requested by the Lender, shall issue a new certificate of stock and proprietary lease in the name of a reputable financially responsible individual or individuals residing in the State of New York designated by the Lender and approved by the Lessor, and such individual or individuals shall have all of the rights provided for in this lease. Further, Lessor agrees to reject a surrender of this Proprietary Lease unless it is accompanied by the written consent of the Lender.

(b)  All additions, improvements, appliances and fixtures which are removable under the terms of this lease and which are enumerated in the statement made as provided in subdivsion (iii) above shall be removed by the Lessee prior to August 31st of the year of cancellation, and on or before said August 31st the Lessee shall deliver possession of the apartment to the Lessor in good condition with all required equipment, fixtures and appliances installed and in proper operating condition and free from all subleases and tenancies, liens, encumbrances and other charges and pay to the Lessor all rent, additional rent and other charges which shall be payable under this lease up to and including the following September 30.

Removal of Fixtures

(c)  The Lessor and its agents may show the apartment to prospective lessees, contractors and architects at reasonable times after notice of the Lessee's intention to cancel. After August 31 or the earlier vacating of the apartment, the Lessor and its agents, employees and lessees may enter the apartment, occupy the same and make such alterations and additions therein as the Lessor may deem necessary or desirable without diminution or abatement of the rent due hereunder.

Permission to Show and Occupy Premises

(d)  If the Lessee is not otherwise in default hereunder and if the Lessee shall have timely complied with all of the provisions of subdivisions (a) and (b) hereof, then this lease shall be cancelled and all rights, duties and obligations of the parties hereunder shall cease as of the September 30th fixed in said notice, and the shares of Lessor shall become the absolute property of the Lessor, provided, however, that the Lessee shall not be released from any indebtedness owing to the Lessor on said last mentioned date.

Effective Date of Cancellation

(e)  If the Lessee shall give the notice but fail to comply with any of the other provisions of this paragraph, the Lessor shall have the option at any time prior to September 30th (i) of returning to the Lessee this lease, the certificate for shares and other documents deposited, and thereupon the Lessee shall be deemed to have withdrawn the notice of intention to cancel this lease, or (ii) of treating this lease as cancelled as of the September 30th named in the notice of intention to cancel as the date for the cancellation

Rights on Lessee's Default

22

of such lease, and bringing such proceedings and actions as it may
deem best to enforce the covenants of the Lessee hereinabove
contained and to collect from the Lessee the payments which the
Lessee is required to make hereunder, together with reasonable
attorneys' fees and expenses.

36.  (a)  If on April 1st in any year the total number of
shares owned by lessees holding proprietary leases, who have given
notice pursuant to Paragraph 35 of intention to cancel such propri-
etary leases on September 30th of said year, shall aggregate ten
percent (10%) or more of the Lessor's outstanding shares, exclusive
of treasury shares, then the Lessor shall, prior to April 30th in
such year, give a written notice to the holders of all issued shares
of the Lessor, stating the total number of shares then outstanding
and in its treasury and the total number of shares owned by lessees
holding proprietary leases who have given notice of intention to
cancel.  In such case the proprietary lessees to whom such notice
shall have been given shall have the right to cancel their leases in
compliance with the provisions of Paragraph 35 hereof, provided only
that written notice of the intention to cancel such leases shall be
given on or before July 1st instead of April 1st.

**Extension
of Option
Cancel**

(b)  If lessees owning at least 80% of the then issued
and outstanding shares of the Lessor shall exercise the option to
cancel their leases in one year, then this and all other proprietary
leases shall thereupon terminate on the September 30th of the year
in which such options shall have been exercised, as though every
lessee had exercised such option.  In such event none of the lessees
shall be required to surrender his shares to the Lessor and all
certificates for shares delivered to the Lessor by those who had,
during that year, served notice of intention to cancel their leases
under the provisions hereof, shall be returned to such lessees.

**Right of
Lessees to
Cancel**

37.  No later than thirty days after the termination of all
proprietary leases, whether by expiration of their terms or other-
wise, a special meeting of shareholders of the Lessor shall take
place to determine whether (a) to continue to operate the building
as a residential apartment building, (b) to alter, demolish or rebuild
the building or any part thereof, or (c) to sell the building and
liquidate the assets of the Lessor, and the Directors shall carry out
the determination made at said meeting of shareholders of the Lessor
and all of the holders of the then issued and outstanding shares of
the Lessor sall have such rights as enure to shareholders of
corporations having title to real estate.

**Continuance
of Coopera-
tive Manage
ment of
Building
After All
Leases
Terminated**

23

38. Notwithstanding anything contained in this lease, if any action shall be instituted to foreclose any mortgage on the land or the building or the leasehold of the land or building, the Lessee shall, on demand, pay to the receiver of the rents appointed in such action rent, if any, owing hereunder on the date of such appointment and shall pay thereafter to such receiver in advance, on the first day of each month during the pendency of such action, as rent hereunder, the rent for the apartment as last determined and established by the Directors prior to the commencement of said action, and such rent shall be paid during the period of such receivership, whether or not the Directors shall have determined and established the rent payable hereunder for any part of the period during which such receivership may continue. The provisions of this Paragraph are intended for the benefit of present and future mortgagees of the land or the building or the leasehold of the land or building and may not be modified or annulled without the prior written consent of any such mortgage holder.

Foreclosu─
Receiver c
Rents

39. The references herein to the Lessor shall be deemed to include its successors and assigns, and the references herein to the Lessee or to a shareholder of the Lessor shall be deemed to include the executors, administrators, legal representatives, legatees, distributees and assigns of the Lessee or of such shareholder; and the covenants herein contained shall apply to, bind and enure to the benefit of the Lessor and its successors and assigns, and the Lessee and the executors and administrators, legal representatives, legatees, distributees and assigns of the Lessee, except as hereinabove stated.

To Whom
Covenants
Apply

40. To the extent permitted by law, the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the Lessee's use or occupancy of the apartment, or any claim of damage resulting from any act or omission of the parties in any way connected with this lease or the apartment.

Waiver of
Trial by
Jury

41. (a) The term "Unsold Shares" means and has exclusive reference to the shares of the Lessor which were issued to the Lessor's grantor(s) or financially responsible individuals, each for his own account, not acting for or on behalf of Lessor's grantor(s) who have purchased said shares from the Lessor's grantor(s), and who have executed Proprietary Leases for the apartments to which such shares are allocated, pursuant to the Plan of Cooperative Organization of Lessor under which the Lessor acquired title to the building. All shares which are Unsold Shares retain their character as such (regardless of transfer) until the apartment to which such Unsold Shares are allocated is actually occupied by the holder of

Unsold
Shares

such shares, and upon such event with respect to the Unsold Shares held by the Lessee herein or his assigns, this paragraph 42 shall become inoperative as to this lease.

(b)  The holder of Unsold Shares may not take advantage of Paragraph 35 of this lease.

(c)  Neither the subletting of the apartment nor the assignment of this lease by the Lessee who is the holder of the block of Unsold Shares allocated thereto, shall require the consents of the Directors or shareholders.

<div style="float:right">Subletting
Apartment
and Sale of
Shares</div>

(d)  Without the consent of the Lessee, no change in the form, terms or conditions of this Proprietary Lease shall (1) affect the rights of the Lessee who is the holder of the Unsold Shares accompanying this lease to sublet the apartment or to assign this lease, as provided in this paragraph, or (2) eliminate or modify any rights, privileges or obligations of such Lessee.

<div style="float:right">Change in
Form of
Lease</div>

(e)  For a period of  five (5) years from the date of closing or until the Unsold Shares constitute less than 25% of the outstanding shares of the Lessor (whichever occurs first), the Lessor shall not take any of the following actions :

<div style="float:right">Limitations
on Lessor's
Right to
Increase
Cash Re-
quirements</div>

(i)  increase the number or change the type of employees from that described in the Offering Plan in the Schedule of Projected Receipts and Expenses for First Year of Cooperative Operation;

(ii)  provide for additional services from those indicated in the aforesaid Offering Plan in the Schedule of Projected Receipts and Expenses for First Year of Coopera- tive Operation unless the actual cost of such new or additional services, when added to the annual cost of all other services being provided, is no greater than that provided in said schedule, adjusted for inflation by the lesser of 15% per year, compounded, or the Bureau of Labor Statistics Consumer Price Index compounded annually.

(iii)  Undertake any capital or major improve- ments unless required by Law or which is approved by resolution of a majority of the Board of Directors or 65% of the shareholders and is necessary to avoid jeopardy to the continued existence of the premises or which consti- tutes a danger to health or safety or to avoid risk of deterioration, destruction or breakdown of a component part, fixture or element of the building, or which is already provided for in the budget inclusive of contingency funds along with unexpended portions of other items.

25

(f).  If the apartment to which the Unsold Shares are allocated is occupied by a non-purchasing tenant then the holder of the Unsold Shares and proprietary lessee thereof shall be obligated as follows:

A.  The holders of Unsold Shares allocated to the apartments occupied by non-purchasing tenants shall be subject to either the New York City Residential Rent Control Law or the New York City Rent Stabilization Law, depending upon whether the apartment is controlled or stabilized, and for so long as such laws shall remain in effect.

B.  The holders of Unsold Shares shall irrevocably appoint the Managing Agent for the Apartment Corporation (or the Apartment Corporation if no Managing Agent is employed by the Apartment Corporation) as their agent to perform for the account and at the expense of the said holders of Unsold Shares all services required to be furnished or performed by the Landlord under the non-purchasing Tenant's lease and the laws and regulations of any applicable agency including, but not limited to, interior repairs and apartment painting.

C.  The holders of Unsold Shares shall deposit with the Managing Agent (or the Apartment Corporation if no Managing Agent is employed by the Apartment Corporation) at the closing a sum equal to two months' maintenance charges to be used as working capital to furnish services required under the non-purchasing tenant's lease and the laws and regulations of any applicable agency.  Upon notice by the Managing Agent that the said deposit has been diminished, said fund shall be replenished by the holders of Unsold Shares within thirty days

D.  The holders of Unsold Shares of apartments  occupied by non-purchasing tenants shall hold the rental security of non-purchasing tenants in accordance with the provisions of the General Obligations Law, Section 7-103.

E.  No eviction proceedings will be commenced at any time against non-purchasing tenants for failure to purchase or for any other reason applicable to expiration of tenancy except that such proceeding may be commenced for non-payment of rent, illegal use or occupancy of the premises, refusal of reasonable access to the owner or a similar breach by the non-purchasing tenant of his obligations to the owner of the apartment or the shares allocated thereto.  Further, an owner of a unit or of the shares allocated thereto may not commence an action to recover possession of an apartment from a non-purchasing tenant on the grounds that he seeks the apartment for the use and occupancy for himself or his family.  The rentals of non-purchasing tenants who reside in apartments not subject to the aforesaid government regulations shall not be subject to any unconscionable increases beyond ordinary rentals for comparable apartments during the period of their occupancy.  In determining comparable rentals consideration shall be given to such factors as building services, level of maintenance and operating expenses.

26

already provided for in the budget inclusive of contingency funds along with unexpended portions of other items.

42. In the event of a breach or threatened breach by Lessee of any provision hereof, the Lessor shall have the right of injunction and the right to invoke any remedy at law or in equity, as if re-entry, summary proceedings and other remedies were not herein provided for, and the election of one or more remedies shall not preclude the Lessor from any other remedy.

*Lessor's Additional Remedies*

43. If more than one person is named as Lessee hereunder, the Lessor may require the signatures of all such persons in connection with any notice to be given or action to be taken by the Lessee hereunder, including, without limiting the generality of the foregoing, the surrender of assignment of this lease, or any request for consent to assignment or subletting. Each person named as Lessee shall be jointly and severally liable for all of the Lessee's obligations hereunder. Any notice by the Lessor to any person named as Lessee shall be sufficient, and shall have the same force and effect as though given to all persons named as Lessee.

*Lessee More Than One Person*

44. If any clause or provision herein contained shall be adjudged invalid, the same shall not affect the validity of any other clause or provision of this lease, or constitute any cause of action in favor of either party as against the other.

*Effect of Partial Invalidity*

45. The marginal headings of the several paragraphs of this lease shall not be deemed a part of this lease.

*Marginal Headings*

46. The provisions of this lease cannot be changed orally.

*Changes to Be In Writing*

IN WITNESS WHEREOF, the parties have executed this lease.

Lessor

By: _Randee Br_____
Randee Feldman    Asst. Secretary

_____ (L.S.)

Sean Murray

_____ (L.S.)
Lessee

27

STATE OF NEW YORK }
                    } ss.:
COUNTY OF ~~NEW YORK~~ }
         Queens.

On the 14 day of    March        , in the year    2008  ,
before me personally appeared    Randee Feldman
to me known, who being by me duly sworn, did depose and say that he
resides at
thatshe is the Asst Secretary           of  35-21 79 ST. TENANTS CORP.
, the corporation described in and
which executed the foregoing instrument; that he knows the seal of
said corporation; that the seal affixed to said instrument is such
corporate seal; that it was so affixed by order of the Board of Dir-
ectors of said corporation, and that he signed his name thereto by
like order.

SETH M. SAHR
Notary Public, State of New York
No. 02SA4864640
Qualified in Nassau County
Commission Expires June 16, 20___

STATE OF NEW YORK }
                    } ss.:
COUNTY OF New York }

On the 20 day of    March        , in the year    2008  ,
before me personally appeared    Sean Murray
to me personally known and known to me to be the individual
described in and who executed the foregoing instrument, and duly
acknowledged to me that he executed the same.

Marc Andrew Lavaia
Notary Public, State of New York
No. 31-02LA6072899
Qualified in New York County
Commission Expires April 15, 2010

28

-140-

## Consent to Assignment of Proprietary Lease: Cooperative Apartment

Dated: March 20, 2008
Apartment: 4E
Address: 35-21 79th Street
Jackson Heights, NY

Number of Shares: -439-

IT IS HEREBY CERTIFIED that consent has been granted by the undersigned corporation to the assignment of the shares allocated to the above apartment and the proprietary lease appurtenant thereto to _Sean Murray_ .

Such consent has been given in writing by a majority of the now authorized number of directors of the corporation or by duly adopted resolution by its Board of Directors at a meeting duly held.

IT IS FURTHER CERTIFIED that all rent, maintenance or other charges due under the proprietary lease have been paid up to and including _March        2008_ .

*March maintenance collected at closing.* (RF)

Lessor: 35-21 79 St. Tenants Corp.

By _Randee Feldman_

Assistant Secretary: Randee Feldman


# HSBC

**ASSIGNMENT OF PROPRIETARY LEASE:**

FOR VALUE RECEIVED **SEAN MURRAY** (the "Assignor") assign(s) to HSBC Mortgage Corporation (USA)  (the "Assignee") the following proprietary lease:

## DESCRIPTION OF PROPRIETARY LEASE

Lease made by **35-21 79 ST TENANTS CORP** to **SEAN MURRAY** dated the **20th** day of **March, 2008** covering Apartment No. **4E** in the building known as **35-21 79 ST TENANTS CORP**, **35-21 79TH STREET, Unit 4E, JACKSON HEIGHTS, NY  11372 QUEENS**  County and State of New York (the "Proprietary Lease").

## TRANSFER OF RIGHTS

The Assignment transfers to Assignee and its successors and/or assigns, the Assignor's rights in and to the Proprietary Lease for all the rest of term subject to the agreements, conditions and limitations contained in the Proprietary Lease.

## WARRANTY

Assignor guarantees to HSBC Mortgage Corporation (USA) that the Assignor is now the tenant under the Proprietary Lease, that there are no claims or liens against the Proprietary Lease or the stock of the cooperative corporation allocated thereto and owned by the Assignor (the "Stock") except as follows: 
and that the Assignor has the power and right to transfer the Proprietary Lease and the Stock.

**DATE**    The Assignor has signed this Assignment on

_____ , 20___

SEAN MURRAY

_____

_____

_____

_____

_____

**ACKNOWLEDGEMENTS**

State of New York      )

                          )   ss.:

County  of Queens      )

On the **20th** day of **March** in the year **2008** before me, the undersigned, personally appeared, **SEAN MURRAY** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his /her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Robert Kaplan
Notary Public,
State of New York
#02KA4862344
Qualified in Queens County
Commission Expires May 19 2010

_____
Notary Public

HSBC Mortgage Corporation (USA)       - 2 -

**HSBC** 

## STOCK POWER

FOR VALUE RECEIVED, I/We, _____SEAN MURRAY_____

[Name]

and _____ hereby sell, assign and transfer unto

[Name]

HSBC Mortgage Corporation (USA)_____ ("Lender") its successors and/or

assigns, shares of the capital stock of _____35-21 79 ST TENANTS CORP_____ standing

[Cooperative Corporation]

in our name on the books of said Corporation represented by Certificate(s) No(s) _0_____

herewith, and do hereby irrevocably constitute and appoint _____ as

attorney to transfer the said stock on the books of said Corporation with full power of

substitution of said stock with all powers herein mentioned; and we hereby ratify and confirm all

acts that Lender, attorney named herein, or any substitute or substitutes therefore, shall lawfully

do by virtue hereof.

Dated:

_____

_____

**HSBC Mortgage Corporation (USA)**



NUMBER
105

SHARES
39

35-21 79th Street
Unit #4E
Jackson Heights, NY

THIS CERTIFIES THAT —— Sean Murray

IS THE OWNER OF ——Four hundred thirty nine—— COMMON SHARES OF
35-21 79 ST. TENANTS CORP.,FULLY PAID AND NON-ACCESSIBLE, TRANSFERABLE ONLY ON THE BOOKS OF THE CORPORATION BY THE
HOLDER HEREOF IN PERSON OR BY DULY AUTHORIZED ATTORNEY UPON SURRENDER OF THIS CERTIFICATE PROPERLY ENDORSED.

THE RIGHTS OF ANY HOLDER HEREOF ARE SUBJECT TO THE PROVISIONS OF THE BY-LAWS OF 35-21 79 ST. TENANTS CORP. AND TO ALL THE TERMS, COVENANTS, CONDITIONS AND
PROVISIONS OF A CERTAIN PROPRIETARY LEASE MADE BETWEEN THE PERSON IN WHOSE NAME THIS CERTIFICATE IS ISSUED, AS LESSEE, AND 35-21 79 ST. TENANTS CORP. AS LESSOR, FOR AN
APARTMENT IN THE PREMISES KNOWN AS 35-21 79 STREET, JACKSON HEIGHTS NEW YORK, WHICH LEASE LIMITS AND RESTRICTS THE TITLE AND RIGHTS OF ANY TRANSFEREE HEREOF. THE
SHARES REPRESENTED BY THIS CERTIFICATE ARE TRANSFERABLE ONLY AS AN ENTIRETY AND ONLY TO AN APPROVED ASSIGNEE OF SUCH PROPRIETARY LEASE. COPIES OF THE PROPRIETARY
LEASE AND THE BY-LAWS ARE ON FILE AND AVAILABLE FOR INSPECTION AT THE OFFICE OF 35-21 79 ST. TENANTS CORP.

IN WITNESS WHEREOF, THE SAID CORPORATION HAS CAUSED THIS CERTIFICATE TO BE SIGNED BY ITS DULLY
AUTHORIZED OFFICERS AND ITS CORPORATE SEAL.

TO BE HEREUNTO AFFIXED THIS 20th

DAY OF March 19 2008

SECRETARY-TREASURER

PRESIDENT

## EXPLANATION OF ABBREVIATIONS

The following abbreviations, when used in the inscription of ownership on the face of this certificate, shall be construed as if they were written out in full according to applicable laws or regulations. Abbreviations, in addition to those appearing below, may be used.

| | | | |
|---|---|---|---|
| JT TEN | As joint tenants with right of survivorship and not as tenants in common | TEN ENT UNIF GIFT MIN ACT | As tenants by the entireties Uniform Gifts to Minors Act |
| TEN COM | As tenants in common | CUST | Custodian for |

*For Value Received,* _____ *hereby sell, assign and transfer unto.*

PLEASE INSERT SOCIAL SECURITY OR OTHER
IDENTIFYING NUMBER OF ASSIGNEE

_____ *Shares*
*represented by the within Certificate, and do hereby irrevocably constitute and appoint* _____ *Attorney to transfer the said Shares on the books of the within named Corporation with full power of substitution in the premises.*

*Dated* _____ *19___*

*In presence of*

_____    _____

NOTICE THE SIGNATURE OF THIS ASSIGNMENT MUST CORRESPOND WITH THE NAME AS WRITTEN UPON THE FACE OF THE CERTIFICATE, IN EVERY PARTICULAR, WITHOUT ALTERATION OR ENLARGEMENT OR ANY CHANGE WHATEVER.

[This form is not intended for use where the Proprietary Lease already has "financing provisions" which duplicate the substance of this agreement or are at substantial variance with the provisions of this agreement.]

Premises: **35-21 79TH STREET, Unit 4E, JACKSON HEIGHTS, NY 11372**

Apartment: **4E**

**Gentlemen:**

We have been asked by **SEAN MURRAY, , ,** ("Lessee") for a loan of **$195,600.00** to be secured by a pledge, security interest, mortgage and/or assignment (hereinafter sometimes collectively referred to as "the Security") of shares of your Corporation allocated to the above Apartment and of the Proprietary Lease (the "Lease") appurtenant thereto (the shares and Lease collectively referred to as "the Apartment").

1. (a)  You are a New York corporation formed for the purpose of cooperative ownership and (owner in fee) of the above premises.
(ground tenant).

(b)  Your records show that the Lessee is the owner of the Apartment.

(c)  You have duly approved or consented to the creation by the Lessee of the Security, if and to the extent such approval is required by the Lease.

2. (a)  You will not consent to any further encumbrances, subletting, termination, cancellation, surrender or modification of the Apartment by the Lessee without our approval, which we will not unreasonably withhold but this provision shall not apply to any modification or termination which, by the terms of the Lease, may be effective against a Lessee when approved by a fixed percentage of other holders of your shares, or which may be effective in the event of condemnation or casualty.

(b)  The Lessee has agreed that, without our written approval, the Lessee will not exercise any right that he/she may have under the lease to terminate the lease so long as the loan is outstanding. Accordingly you will not consider any attempt to do so effective.

(c)  You will notify us of any notice of intention to terminate the Lease, and

(1)  If the Lessee's default can be cured by the payment of money, you will also notify us promptly of any default involving an amount equal to or exceeding three months maintenance payments and will take no action to terminate the Lease or cancel the shares if the default be cured either by us for the account of the Lessee or by the Lessee within 15 days after such notice of default or intention to terminate; or

(2)  If the default cannot be so cured, you will institute no action to terminate the Lease or cancel the shares until we have had reasonable notice and opportunity, by action or otherwise, to induce the Lessee to cure the default, such opportunity to be no less than the time provided in the Lease for the Lessee to cure.

(3)  If you shall terminate the Lease and cancel the shares for a default not curable by the payment of money, then, provided we pay you the amounts which are due to you under the Lease (including its deficiency clause) when due, you shall not sell or sublet the apartment without our approval, unless the net proceeds of such sale or subletting shall equal or exceed the amount owing to us by Lessee.

(d)  You will accept payment from us on behalf of Lessee of any sums due under the Lease (including its deficiency clause), any payments made by us under the terms of this agreement will be deemed so paid, and no payments made in accordance herewith shall be deemed to limit our rights against the Lessee pursuant to law.

Copyright 1973 by AZTECH DOCUMENT SYSTEMS, INC.
Approved by THE COOPERATIVE HOUSING LAWYERS GROUP                    1


**HSBC Mortgage Corporation (USA)**

(e)   You shall recognize our right as lienor against the Apartment pursuant to the Security, and, if the Lease be terminated and/or shares cancelled against the net proceeds of any sale or subletting of the apartment, after reimbursement to you of all sums due you under the Lease.

3.   (a)   Before delivery of this letter by you to us, we will have authority from the Lessee to give, and will, on request, give you a copy of the financial and credit information provided by him, but shall be under no duty to advise you of the results of any credit check we may make.

(b)   Notwithstanding any apparent authority granted to us under agreements with the Lessee, WE SHALL HAVE NO RIGHT OR POWER TO TRANSFER THE APARTMENT UPON FORECLOSURE OR OTHERWISE EITHER TO US OR ANYONE ELSE WITHOUT YOUR APPROVAL AS REQUIRED BY THE LEASE provided, however, that nothing contained herein shall limit any rights we may have to dispossess the Lessee pursuant to law or realize upon our security in accordance herewith.

(c)   If through oversight or negligence you or your agents or employees shall fail to notify us of Lessee's default prior to termination of the Lease, we will not seek to hold you or your agents or employees liable for breach of this agreement, provided that:

(1)   you advise us promptly after discovering your failure, and

(2)   if you have already sold or contracted to sell the Apartment, that you pay us the net proceeds of such sale (after reimbursing yourselves for all sums due you), or such lesser sum as shall equal the amount owing to us by the Lessee (the balance being payable to the Lessee), or

(3)   If you have not contracted to sell the Apartment, that the provisions of paragraphs "2. (c)(3)" and "2. (e)" hereof shall apply.

(d)   We will indemnify you and your agent against loss, liability of expense incurred in connection with any claim by the Lessee, his/her successors or assigns against either of you arising out of our representations pursuant hereto or your agreements herein (except as stated in paragraph "3. (a)" hereof), provided you give us prompt notice of any such claim.  We may contest such claim in your name and on your behalf, but at our sole cost and expense, and you will execute such documents and do such things as are reasonably necessary to assist us in such contest.

4.   While we have the right but no obligation to cure the Lessee's defaults under the Lease, if we do not do so within the time provided for herein, you shall have no obligation to us, except that in the event of sale or subletting the Apartment, you shall recognize our rights as lienor against the net proceeds of any sale or subletting (after reimbursement to you of all sums which are due to you under the Lease).

Any notice or approval provided for herein shall be deemed valid only if in writing and sent by registered or certified mail as follows: to you, in care of your Managing Agent, with a copy by regular mail addressed to us at HSBC Mortgage Corporation (USA), Attention:  Mortgage Servicing, 2929 Walden Avenue, Depew, NY 14043.

Either of us may change the address to which notices or approval shall be mailed by notice given as herein provided.  This letter and the representations and agreements contained herein shall be deemed made as of the date of the making of the loan.

**HSBC Mortgage Corporation (USA)**

By: _____
       Approved: /

Agreed to: _____

_____ Lessor

By: _____
       Asst Secy.

**HSBC Mortgage Corporation (USA)**                    2

_____ Lessee

_____ Lessee

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 3 |
|---|---|

Document Date: 02-27-2008    Preparation Date: 02-28-2008
Document Type: INITIAL COOP UCC1    COOPERATIVE WITH ADDENDUM
Document Page Count: 2

| PRESENTER: | RETURN TO: |
|---|---|
| TITLEVEST AGENCY, INC | TITLEVEST AGENCY, INC |
| 44 WALL STREET | 44 WALL STREET |
| 10TH FLOOR | 10TH FLOOR |
| NEW YORK, NY 10005 | NEW YORK, NY 10005 |
| 212-757-5800 | 212-757-5800 |
| nicole@titlevest.com | nicole@titlevest.com |

## PROPERTY DATA

| Borough | Block | Lot | | Unit | Address |
|---|---|---|---|---|---|
| QUEENS | 1279 | 58 | Entire Lot | 4E | 35-21 79TH STREET |

**Property Type:** SINGLE RESIDENTIAL COOP UNIT

## CROSS REFERENCE DATA

CRFN_____  *or*  Document ID_____  *or*  _____ Year_____ Reel____ Page_____  *or*  File Number_____

## PARTIES

| DEBTOR: | SECURED PARTY: |
|---|---|
| SEAN MURRAY | HSBC MORTGAGE CORPORATION (USA) |
| 35-46 74TH STREET, APT. 226 | 2929 WALDEN AVENUE |
| JACKSON HEIGHTS, NY 11372 | DEPEW, NY 14043-2602 |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 40.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE**
**OF THE CITY REGISTER OF THE**
**CITY OF NEW YORK**
Recorded/Filed        03-03-2008 09:58
City Register File No.(CRFN):
**2008000085182**

*Annette M. Hill*

***City Register Official Signature***

# UCC FINANCING STATEMENT
FOLLOW INTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER**(optional)

**B. SEND ACKNOWLDGEMENT TO: (Name and Address)**

Robert Kaplan, PC
70-20 Austin Street, Suite 100
Forest Hills, NY 11375

**1.DEBTOR'S EXACT FULL LEGAL NAME** insert only <u>one</u> debtor name (1a or 1b) - do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 1a.ORGANIZATION'S NAME | | | | |
| OR | 1b. INDIVIDUAL'S LAST NAME<br>Murray | FIRST NAME<br>Sean | MIDDLE NAME | SUFFIX |

| 1c. MAILING ADDRESS<br>35-46 74th Street, Apt. 226 | CITY<br>Jackson Heights | STATE<br>NY | POSTAL CODE<br>11372 | COUNTRY<br>USA |
|---|---|---|---|---|
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME**    -insert only <u>one</u> debtor name (2a or 2b) -do not abbreviate or combine names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** -insert <u>only</u> one party name (3a or 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>HSBC Mortgage Corporation (USA) | | | | |
| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 3c. MAILING ADDRESS<br>2929 Walden Avenue | CITY<br>Depew | STATE<br>NY | POSTAL CODE<br>14043-2602 | COUNTRY<br>USA |
|---|---|---|---|---|

4. This FINANCING STATEMENT covers the following collateral:

ALL OF THE DEBTOR(S) RIGHT, TITLE AND INTEREST IN AND TO 439 SHARES OF CAPITAL STOCK OF 235-21 79TH STREET TENANTS CORP ("THE SHARES") ALLOCATED TO APARTMENT 4E (THE "APARTMENT") IN THE BUILDING KNOWN AS 35-21 79TH STREET, JACKSON HEIGHTS AND ALL OF THE DEBTOR(S) RIGHT, TITLE AND INTEREST IN THAT CERTAIN PROPRIETARY LEASE BETWEEN 235-21 79TH STREET TENANTS CORP AS LESSOR AND DEBTOR(S), AS LESSEE, (THE "LEASE"), AND ANY SUBSTITUTE, REPLACEMENT AND ADDITIONAL SHARES AND ANY AMENDMENTS TO AND EXTENSIONS OR REPLACEMENTS OF THE LEASE.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON - UCCFILING |
|---|---|---|---|---|---|---|

6. ☒ This FINANCING STATEMENT is to be filed [for record ] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum    [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor (s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY -- UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

**UCC FINANCING STATEMENT COOPERATIVE ADDENDUM**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME + PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

Robert Kaplan, PC
70-20 Austin Street, Suite 100
Forest Hills, NY 11375

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 19. Complete EITHER 19a or 19b. | 19a. This COOPERATIVE ADDENDUM [X] accompanies a FINANCING STATEMENT. | 19b. File Number assigned to the initial FINANCING STATEMENT: |
|---|---|---|

20. FIRST DEBTOR OF RECORD: (Complete either 20a or 20b, but not both.)

| 20a. ORGANIZATION'S NAME: | | | |
|---|---|---|---|
| OR | 20b. INDIVIDUAL'S LAST NAME: **Murray** | FIRST NAME: **Sean** | MIDDLE NAME: | SUFFIX: |

21. FIRST SECURED PARTY OF RECORD: (Complete either 21a or 21b, but not both.)

| 21a. ORGANIZATION'S NAME: **HSBC Mortgage Corporation (USA)** | | | |
|---|---|---|---|
| OR | 21b. INDIVIDUAL'S LAST NAME: | FIRST NAME: | MIDDLE NAME: | SUFFIX: |

22. This COOPERATIVE ADDENDUM covers: (check one.)

[X] One COOPERATIVE INTEREST    [ ] More than one COOPERATIVE INTEREST

23. Unit uses: (Check all that apply.)

[X] Residential    [ ] Commercial    [ ] Parking

[ ] Storage    [ ] Other (If checked, complete 23a.)

23a. Specify other Unit use(s):

**IMPORTANT:**

This COOPERATIVE ADDENDIM is for use when the collateral includes a COOPERATIVE INTEREST.

Only as to collateral which is a COOPERATIVE INTEREST, but not as to other collateral, the initial FINANCING STATEMENT to which this COOPERATIVE ADDENDUM relates shall be effective for 50 years from the date of filing the initial FINANCING STATEMENT.

24. COOPERATIVE UNIT REAL PROPERTY FILING DATA:

24a. ADDRESS NUMBER AND STREET: (One only)
**35-21 79th Street**

24b. COMMUNITY (e.g., City, Town, Village or Borough):
**Jackson Heights**

24c. COUNTY:
**Queens**

24d. DISTRICT:

24e. SECTION:

24f. BLOCK: 1279

24g. LOT: 58

24h. UNIT NUMBER(S) or DESIGNATION(S):
**4E**

25. Name of the COOPERATIVE ORGANIZATION:
**235-21 79th Street Tenants Corp**

26. Complete if applicable. (If checked, complete 26a.)

[ ] The purpose of this COOPERATIVE ADDENDUM is to SUBORDINATE this security interest to another security interest in the same COOPERATIVE INTEREST.

26a. FILE NUMBER of security interest being given consensual priority:

27. Check if Applicable.

[ ] The security agreement provides for FUTURE ADVANCES.

28. MISCELLANEOUS:

NEW YORK UCC FINANCING STATEMENT COOPERATIVE ADDENDUM (FORM UCC1C1Ad) (REV. 6/14/01)

# Exhibit "B"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

                                                              X
In re:

Sean M. Murray                                    Case No. 13-42618 (ESS)

                                                  Chapter 7

                Debtor.
                                                              X

## STIPULATION AND ORDER WITHDRAWING APPLICATIONS FOR ORDERS TO SHOW CAUSE AS TO GROSS POLOWY, LLC, ATTORNEYS ASSOCIATED WITH GROSS POLOWY, LLC AND SPECIALIZED LOAN SERVICING, LLC

WHEREAS, on August 10, 2017 the Debtor Sean M. Murray (the "**Debtor**") instituted this Chapter 7 case (the "**Bankruptcy Case**") via the filing of a petition (ECF Docket No. 1);

WHEREAS, on December 8, 2017 Debtor received a discharge (ECF Docket No. 8), and

WHEREAS, the **Debtor** having filed the following motions seeking the entry of Orders to Show Cause:

Docket No. 43:   Application for an Order to Show Cause
Docket No. 67:   Application for and Order to Show Cause
Docket No. 74:   Application for an Order to Show Cause

and the above motions shall henceforth be collectively known as **Motions for Orders to Show Cause**, and

WHEREAS, the **Debtor**, Gross Polowy, LLC, and Specialized Loan Servicing, LLC have engaged in good faith settlement discussions to resolve the **Motions for Orders to Show Cause**, and

WHEREAS, the **Debtor**, Gross Polowy, LLC, Specialized Loan Servicing, LLC have contemporaneously herewith entered into a confidential settlement agreement (the "**Settlement Agreement**"), resolving the **Motions for Orders to Show Cause**, the effectiveness of which is subject to this Court approving this stipulation; and

WHEREAS, the **Settlement Agreement** provides, among other things, for the filing of this stipulation withdrawing the **Motions for Orders to Show Cause** as to Gross Polowy, LLC, attorneys associated with Gross Polowy, LLC and Specialized Loan Servicing, LLC with prejudice

NOW, THEREFORE, IT IS HEREBY STIPULATED, AGREED AND ORDERED THAT:

1. This Court has jurisdiction over these proceedings and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334 and this Court shall retain jurisdiction to enforce the terms of this stipulation and order and any agreement executed in connection herewith.

2. None of the parties hereto admit any fault or wrongdoing in connection with the **Motions for Orders to Show Cause** or the factual allegations or legal issues raised therein, and nothing herein shall be construed as an admission of any liability, wrongdoing, or merits of any claims or defenses asserted with respect thereto.

3. The terms of the **Settlement Agreement** shall not be disclosed, reproduced, published or disseminated for any purpose and shall be kept confidential by the parties.

4. The **Motions for Orders to Show Cause** are hereby withdrawn with prejudice as they relate to Gross Polowy, LLC, all attorneys associated with Gross Polowy, LLC including but not limited to Dennis Jose, Esq., Deborah Turofsky, Esq., Ehret Van-Horn, Esq., and Specialized Loan Servicing, LLC

Sean M. Murray, Debtor

_SEAN M. MURRAY_ Dated _10/26/18_
By     Sean M. Murray

Gross Polowy, LLC as counsel to Gross Polowy, LLC and all its associated attorneys and Specialized Loan Services, LLC

By  _____ Dated _10/26/18_
    Dennis Jose, Esq.
    Gross Polowy, LLC
    900 Merchants Concourse, Suite 412
    Westbury, NY 11590
    716 204 1781

2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

IN RE:

SEAN M. MURRAY,                                        CHAPTER 7

                                                        CASE NO. 17-44157

                          DEBTOR.

_____

SEAN M. MURRAY,
                          *Plaintiff,*

                                                        ADV. PRO. CASE NO. 18-01141
              -against-
                                                        JUDGE: Hon. Elizabeth S. Stong
JOHN AND JANE DOE CORPORATIONS
AND ENTITIES, SPECIALIZED LOAN
SERVICING, LLC AND NATIONSTAR
MORTGAGE LLC D/B/A MR COOPER, AS
SERVICING AGENTS FOR FEDERAL
HOME LOAN MORTGAGE CORPORATION,

                          *Defendants.*

_____


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


### INTRODUCTION

Specialized Loan Servicing, LLC ("SLS" or "Defendant") seeks summary judgment with respect to the Complaint.

### JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. Section 1334(b) and Section 157.

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, incorporated by Bankruptcy Rule 7056(c), summary judgment should be granted to the moving party if the Court determines that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (*quoting* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.C. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

As to matters on which the non-moving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' –that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## THE LIEN IS PERFECTED

In order to give protection to a holder of a security interest, the Uniform Commercial Code establishes a notice procedure by which information becomes available to prospective lenders or purchasers, disclosing the encumbrances of title upon chattels. *See* UCC 9–402 *et seq.*; *TMMB Funding Corp. v. Associated Food Stores, Inc.*, 523 N.Y.S. 2d 161 (NY App. Div. 1988).

Section 9–402 of the UCC states in relevant part that "[a] financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor . . . and contains a statement indicating the types, or describing the items of collateral".

Section 9–402(8) of the UCC provides that "[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading".

When determining whether an inaccuracy in the financing statement was a "minor error" which was "not seriously misleading" the court should ask whether a reasonably diligent searcher would be likely to discover the financing statement.

In *In re Excel Stores, Inc.,* 341 F.2d 961 (2d Cir. 1965), a much more serious error was found by the Second Circuit to not be seriously misleading.  In that case, a financing statement was completed with the wrong debtor name.  Instead of "Excel Stores, Inc.", the financing statement was completed with the name "Excel Department Stores").  Nevertheless, the Second Circuit founds that the financing statement in that case was sufficient to put an inquiring party on notice of the existence of a potential lien.  The Second Circuit concluded that the minor error in that case did not render the financing statement seriously misleading.

In the instant case, the minor error was in the text of the description found in the financing statement, and was not in the name of the Debtor or the secured party.  Therefore, the minor error would not have played any role in the indexing of the financing statement.

It is clear that the financing statement in the instant case was sufficient to place a party on inquiry notice.

## THE STRONGARM POWERS OF THE TRUSTEE ARE INAPPLICABLE

In support of the assertion that the Debtor has the right to utilize the strongarm powers of the Trustee in order to avoid SLS' Loan, the Debtor seeks to utilize Section 522(g), 522(h) and 544 of the Bankruptcy Code.

Section 522(g) provides, in relevant part, that "[t]he debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if— (1) such transfer is avoidable by the trustee under section 544 . . . of this title . . . and (2) the trustee does not attempt to avoid such transfer.

Section 522(g) provides, in relevant part, that "the debtor may exempt under subsection (b) of this section property that the trustee recovers . . . to the extent that the debtor could have exempted such property under subsection (b) of this section if such property had not been transferred, if—(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and (B) the debtor did not conceal such property . . . ."

Section 544(a) provides, in relevant part, that "[t]he trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists."

The Debtor asserts that the two sections in conjunction allow him to step into the role of the Trustee and to avoid the Loan for the Debtor's benefit.  The cases relied upon by the Debtor for this assertion are not New York cases, and neither actually supports the position for which they are cited.

In *In re Trosky*, 371 B.R. 1 (Bankr. M.D. Pa. 2006), the Court considered an argument very similar to the one presented by the Debtor in the instant case, and explicitly rejected the argument, noting that the mortgage was not an involuntary transfer of the property.  The court notes that "[t]he shortcoming in the Debtors' argument lies in the fact that there was no involuntary transfer of the Debtors' property. The transfer of property here was the Debtors voluntarily mortgaging their property interests to M & T's predecessors, Franklin First Savings Bank, for $129,300 back in 1995. Because the Debtors could not have exempted any property under § 522(g)(1), they cannot avoid a transfer of property under § 522(h)."

In the *Myers* case, also cited by the Debtor, a debtor seeks to avoid a mortgage that the debtor in that case argues was forged.  The court in Myers clearly acknowledges this issue, noting that "Section 522(h) only allows a debtor to prosecute actions designed to avoid a transfer of property. It does not authorize suits seeking declaratory relief.  The present action seeks only declaratory relief — that Defendant's mortgage is an invalid forgery — and not the avoidance of any transfer to the Defendant. Accordingly, it is not based upon and states no claim under § 522(h)." *In re Myers*, 262 B.R. 445 (Bankr. N.D. In. 2001).  In the instant case, the Debtor is seeking declaratory relief, setting aside the Loan.

The same issue was recently addressed by an opinion of Judge Grossman in the Eastern District of New York.  In *In re Dobbs*, 597 B.R. 74, Judge Grossman reviews a wide selection of caselaw on the issue of whether a debtor ever has standing to utilize Section 544, and ultimately concludes that a debtor cannot utilize the strong arm powers of Section 544.  Additionally, Judge Grossman concludes that a debtor has no statutory right under Section 522(h) to seek to avoid a voluntary mortgage.

## CONCLUSION

SLS is the current holder of a perfected lien on the Property.  The minor error in the financing statement was insufficient to render it martially misleading as a matter of law.

In addition, the Debtor has not established that he has a right to utilize the Trustee's avoidance powers with respect to a voluntary mortgage.  Even assuming arguendo that the Court were to find that the Loan were unperfected, the Debtor does not have the right to avoid a voluntary lien pursuant to Section 522(h), 522(g) and 544.

Therefore, there is no genuine issue of material fact, and SLS's request for summary judgment should be granted.

Dated: November 11, 2019
      Melville, New York               Respectfully submitted,

                                 /s/ Robert W. Griswold
                                 Robert W. Griswold
                                 Bankruptcy Attorney
                                 Shapiro, DiCaro & Barak, LLC
                                 Attorneys for Specialized Loan Servicing, LLC
                                 One Huntington Quadrangle, Suite 3N05
                                 Melville, NY  11747
                                 Telephone: (631) 844-9611
                                 Fax: (631) 844-9525

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
IN RE:

SEAN M. MURRAY,

CHAPTER 7

CASE NO. 17-44157

DEBTOR.

---

SEAN M. MURRAY,

*Plaintiff,*

-against-

ADV. PRO. CASE NO. 18-01141

JUDGE: Hon. Elizabeth S. Stong

JOHN AND JANE DOE CORPORATIONS
AND ENTITIES, SPECIALIZED LOAN
SERVICING, LLC AND NATIONSTAR
MORTGAGE LLC D/B/A MR COOPER, AS
SERVICING AGENTS FOR FEDERAL
HOME LOAN MORTGAGE CORPORATION,

*Defendants.*

---

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK      )
                       )ss:
COUNTY OF MONROE       )

I, Ariane B. Drew, being sworn, say, I am not a party to this action; I am over 18 years of age, I reside in Rochester, New York.

On November 11, 2019 I served the within Motion for Summary Judgment and Memorandum of Law upon:

TO:                                                      Debtor Appearing Pro Se

Sean M. Murray
PO Box 1110
Attn: 2544
Albany, NY 12201
seanmurray@prodigy.net

16-057212                           1

Cleo f Sharaf
Ras Boriskin
900 Merchants Concourse
Westbury, NY 11590
csharaf@rasboriskin.com

at the addresses designated by the foregoing individuals for that purpose by depositing a true copy of

same enclosed in a postpaid, properly addressed wrapper, in an official depository under the exclusive

care and custody of the United States Postal Service within the State of New York and via electronic mail

sent to the designated electronic mailing addresses.

Ariane B. Drew
Bankruptcy Paralegal
Shapiro, DiCaro & Barak, LLC
Attorneys for Nationstar Mortgage LLC
175 Mile Crossing Boulevard
Rochester, New York 14624
Telephone: (585) 247-9000
Fax: (585) 247-7380

Sworn to before me this
_11_ day of November, 2019

Notary Public

ELIZABETH FRANKLIN
Notary Public, State of New York
No. 01FR6393248
Qualified in Monroe County
Commission Expires June 10, 2023