UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:

                                        Chapter 7

SEAN M. MURRAY,

                                        Case No. 17-44157-ess

         Debtor.
---------------------------------------------------------x
SEAN M. MURRAY,

         Plaintiff,                       Adv. Pro. No. 18-01141-ess

-against-

JOHN AND JANE DOE CORPORATIONS
AND ENTITIES, SPECIALIZED LOAN
SERVICING, LLC, and NATIONSTAR
MORTGAGE LLC D/B/A MR COOPER,
AS SERVICING AGENTS FOR FEDERAL
HOME LOAN MORTGAGE CORPORATION,

         Defendants.
---------------------------------------------------------x

## <u>MEMORANDUM DECISION ON SPECIALIZED LOAN SERVICING, LLC'S MOTION FOR SUMMARY JUDGMENT</u>

*Appearances:*

Sean M. Murray
  *Plaintiff, pro se*

Barbara Dunleavy, Esq.
Robert W. Griswold, Esq.
Shapiro, DiCaro & Barak, LLC
One Huntington Quadrangle, Suite 3N05
Melville, NY 11747
  *Attorneys for Defendant*
  *Specialized Loan Servicing, LLC*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

This adversary proceeding began on December 21, 2018, when the plaintiff Sean Murray filed a complaint against Nationstar Mortgage LLC *dba* Mr. Cooper ("Nationstar") and Specialized Loan Servicing LLC ("SLS"), and unnamed John and Jane Doe Corporations and Entities.[1]  SLS is the current servicer of the Mortgage on Mr. Murray's cooperative apartment located at 35-21 79th Street, Unit 4E, Jackson Heights, NY 11372 (the "Property").  SLS is a co-defendant together with the previous servicer, Nationstar, and other unnamed individuals and entities.

In this action, Mr. Murray seeks to cancel and discharge the Note and Mortgage on his cooperative apartment.  He asserts, in substance, that SLS is not a secured creditor, or perhaps even a creditor at all, as a result of several legal infirmities and errors in the loan transaction and recording of the security interest reflected in the Mortgage.  He also claims the right to stand in the shoes of the Chapter 7 trustee and to claim the value of his cooperative apartment for his bankruptcy estate.

By this Motion for Summary Judgment, SLS seeks to show that, as a matter of law, it is both a creditor with standing and a secured creditor.  It argues that it is a creditor with standing because it has possession of the Note.  And it argues that it is a secured creditor because the

---

[1]  Mr. Murray is proceeding *pro se* in this adversary proceeding.  The Court notes that, as the Second Circuit has observed, where a party "is a *pro se* litigant, we read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."  *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994).  *See Frederick v. Wells Fargo Home Mortg.*, 649 F. App'x 29, 30 (2d Cir. 2016) (observing that courts should "liberally construe [such] complaints . . . to state the strongest arguments that they suggest" and "a complaint filed pro se is held to a less stringent pleading standard than one filed by counsel.").

lender's security interest is adequately perfected.  SLS argues that if those two matters are established, then it is entitled to judgment as a matter of law on Mr. Murray's claims to wipe out the Note and Mortgage.

More precisely, SLS seeks summary judgment on each of three "components" of Mr. Murray's claims, as follows.  First, SLS seeks summary judgment on the question of its standing to proceed as a secured creditor in Mr. Murray's bankruptcy case.  Mot., ECF No. 28 ¶ 20. Second, SLS seeks summary judgment on the question of whether its lien is valid and perfected. Mot. ¶ 20.  And finally, SLS seeks summary judgment on the question of whether it has any liability for alleged violations of the automatic stay, in light of a settlement that was previously entered into among Mr. Murray, SLS, and others.  Mot. ¶ 20.  Taken together, SLS argues, these three components show that it is entitled to summary judgment on all of Mr. Murray's claims.

## **Jurisdiction**

This Court has jurisdiction over this matter pursuant to Judiciary Code Sections 157(b)(1) and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and venue is proper before this Court pursuant to 28 U.S.C. § 1409.

"Core proceedings include, but are not limited to . . . matters concerning the administration of the estate;" "allowance . . . of claims against the estate," and "determinations of the validity, extent, or priority of liens;" among other types of claims.  28 U.S.C. § 157(b)(2)(A), (B), (K).  And as core matters, this Court has constitutional authority to enter a final judgment, because Mr. Murray's claims stem "from the bankruptcy itself."  *Stern v. Marshall*, 564 U.S. 462, 499 (2011).

To the extent that the matters are not core proceedings pursuant to Judiciary Code Section 157(c), Mr. Murray has indicated his consent to this Court entering a final judgment in the Complaint.  Compl., ECF No. 1 ¶ 8.  SLS and Nationstar have also consented to this Court entering a final judgment.  Dec. 3, 2020 Hearing Tr. at 5:22-6:02, 10:15-21.  *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, __, 135 S. Ct. 1932, 1940 (2015) (holding that in a non-core proceeding, a bankruptcy court may enter final orders "with the consent of all the parties to the proceeding").

## **Background**

### *The Loan, Mortgage, and Assignments*

In his Complaint, Mr. Murray alleges that he currently owns the stock shares and proprietary lease establishing his rights in the Property.  Compl. ¶ 21.  He also alleges that on or about March 20, 2006, he executed the Note and Mortgage in the amount of $195,600, and "delivered" those documents to HSBC Mortgage Corporation (USA), N.A.  Compl. ¶ 23.

The Complaint describes a series of assignments of the "Security Agreement," including the Note and Mortgage, in connection with the Property.  Mr. Murray alleges that on April 19, 2013, HSBC Mortgage Corporation (USA), N.A. assigned the Mortgage to HSBC Bank USA, N.A. ("HSBC").  Compl. ¶ 26.  Then, he alleges, on December 15, 2016, HSBC assigned the Security Agreement to Nationstar, and on February 27, 2018, Nationstar assigned the Security Agreement to SLS.  Compl. ¶¶ 27-28.

SLS confirms the chain of assignments in its Reply.  SLS states that Mr. Murray entered into a mortgage with HSBC and executed a note and security agreement on March 20, 2008.  Reply, ECF No. 34 ¶¶ 29-30.  It also states that the loan was subsequently assigned by HSBC to Nationstar, as shown on a UCC Financing Statement Amendment recorded on December 15,

2016 and reflected as CRFN 2016000444774.  Reply ¶ 32.  It states that Nationstar assigned the

loan to SLS, as shown on a UCC Financing Statement Amendment recorded on February 7, 2018

and reflected as CRFN 2018000045046.  Reply ¶ 33.  For these reasons, SLS states that it is a

secured creditor of Mr. Murray.  Mot. ¶ 1.  And in support of the Summary Judgment Motion, it

submits copies of the Note, the Security Agreement, the Proprietary Lease, the Assignment of

Stock Certificate, and the UCC financing statement.  Mot. Exh. A.

*Mr. Murray's Bankruptcy Case*

Mr. Murray's Chapter 7 bankruptcy case was filed more than three years ago in this

Court.  Certain events in his case provide some context for the issues before the Court on this

Motion for Summary Judgment, as set forth below.

Mr. Murray filed a Chapter 7 bankruptcy case on August 10, 2017.  *In re Sean Murray*,

Case No. 17-44157, ECF No. 1.  He scheduled Nationstar and SLS as creditors holding

unsecured, non-priority claims in the amount of $238,176.40.  Compl. ¶ 22.  *See* Amended

Schedule E/F, Case No. 17-44157, ECF No. 22.  On December 8, 2017, the Court entered an

order discharging Mr. Murray.  Case No. 17-44157, ECF No. 24.

About four months after the bankruptcy case was commenced, on December 13, 2017,

Nationstar, the servicer at the time, filed a motion for relief from the automatic stay (the "Stay

Relief Motion").  Case No. 17-44157, ECF No. 26.  Mr. Murray alleges that Nationstar's Stay

Relief Motion "incorrectly alleged" that the Note and Mortgage have been in default since

September 1, 2014, with arrears of $46,282.00 and a total amount owed of $246,748.72.  Compl.

¶ 31.

On April 13, 2018, Nationstar filed a letter stating that its servicing rights with respect to

the Property were transferred to SLS, and withdrawing its Stay Relief Motion.  Case No. 17-

44157, ECF No. 56.  On May 17, 2018, Mr. Murray objected to Nationstar's request to withdraw the Stay Relief Motion in a motion to strike.  Case No. 17-44157, ECF No. 65.  And the Court marked the Stay Relief Motion off the calendar on April 26, 2018.

Between March and October 2018, Mr. Murray filed requests for orders to show cause, motions for contempt and sanction, and a motion to strike seeking relief against Nationstar, its counsel, and SLS, among others (collectively, the "Defendants").  These requests for relief addressed violations of the automatic stay and improper service of loss mitigation communications, among other matters.  *See* Case No. 17-44517 ECF Nos. 43, 53, 65, 67, 74, 83, and 95.  The Defendants opposed these requests for relief.  *See* Case No. 17-44517 ECF Nos. 50, 81, 93.

On November 29, 2018, in light of the several pending requests for relief, the Court directed Mr. Murray, on consent, to file a consolidated application for relief, consistent with the issues identified in his motions and requests for orders to show cause.  Case No. 17-44157, ECF No. 102.  This adversary proceeding followed, and the Court marked off the hearings on Mr. Murray's pending motions and requests for orders to show cause without prejudice on April 10, 2019.

On October 19, 2018, SLS filed a letter advising the Court of a proposed settlement between it and Mr. Murray with respect to his allegations for violations of the automatic stay and discharge injunction, and attaching an unexecuted settlement agreement.  Case No. 17-44157, ECF No. 97.  And on March 18, 2020, SLS filed a notice of proposed stipulation between Mr. Murray and Gross Polowy, LLC, its counsel at the time, to settle the matters identified in Mr. Murray's applications for orders to show cause (Case No. 17-44157, ECF Nos. 43, 67, 74), and attached a redacted executed settlement agreement that was originally attached without

signatures on October 19, 2018.  Case No. 17-44157, ECF No. 114 (the "Settlement

Agreement").  And the Court approved the parties' Settlement Agreement by Order dated

October 20, 2020.  Case No. 17-44157, ECF No. 115.

*This Adversary Proceeding*

On December 21, 2018, Mr. Murray commenced this adversary proceeding by filing a

complaint against Nationstar, SLS, and unnamed "John and Jane Doe Corporations and Entities,"

seeking a declaratory judgment and damages, sanctions, and costs.  Compl. at 1.

In the Complaint, Mr. Murray states that he brings the action "pursuant to New York

Real Property Actions and Proceedings Law ('RPAPL') Article 15" and seeks:

> a declaratory judgment avoiding, canceling, and discharging the note and
> mortgage of record referred to below, and attacking the nature extent and validity
> of such lien which affects the real property . . . and preserving them for the benefit
> of the Debtor's estate.

Compl. ¶ 1.

Mr. Murray states three claims for relief.  In the First Claim for Relief, he states, among

other things, that "the HSBC Mortgage was satisfied by payment in full from the proceeds

advanced in connection with the HSBC Note and Mortgage;" that "the HSBC Mortgage was

used to extort amounts paid from inception or closing till August 2014, in addition to payment of

$238,176.42 Nationstar received August 10, 2017 in response to a requested payoff statement;"

and that SLS, among other defendants, "failed to record a satisfaction of the HSBC Mortgage.

Accordingly, there is no amount due and owing under the HSBC Mortgage."  Compl. ¶¶ 42-44.

He seeks a declaratory judgment:

> a.  that the HSBC Mortgage is satisfied;
>
> b.  that the HSBC Mortgage does not secure a claim against a debtor;
>
> c.  avoiding the HSBC Mortgage pursuant to 11 U.S.C. § 506(d); [and]

      d.  preserving the HSBC Mortgage for the benefit of the Debtors' estates pursuant
         to Bankruptcy Code § 551.

Compl. ¶ 45.

In the Second Claim for Relief, Mr. Murray states, among other things, that "the

Defendants claim an interest in the Property adverse to that of the Plaintiff because of the HSBC

Note and Mortgage," and:

      Any interest that the Defendants ever had or claims to have had in the property . .
      . [is] null and void and of no force and effect as against the Plaintiff and the
      Debtor's estate and the Plaintiff holds the Property free and clear from any claim,
      lien or encumbrance arising from the Note and Mortgage.

Compl. ¶¶ 47, 48.  He seeks a judgment:

      a.  declaring that the Defendants and every person claiming under the Defendants
         be forever barred from any and all claims to the estate or interest in the
         Property;

      b.  declaring that the Plaintiff is the lawful owner and vested in title to the
         Property described in this complaint, free and clear of the Note and Mortgage;

      c.  declaring that the Note and Mortgage are void, cancelled and discharged
         pursuant to 11 U.S.C. § 506(d) and/or 544;

      d.  directing the Clerk of the County of Queens to cancel and discharge the
         Mortgage of record;

      e.  and preserving the Note and Mortgage for the benefit of the Debtor's estate
         pursuant to Bankruptcy Code § 551.

Compl. ¶ 52.

Finally, in his "Consolidated Claims for Relief,", Mr. Murray "incorporates [seven]

Consolidated Motions for Contempt, Sanctions, Lost Wages, Costs, Fees, and Actual Treble,

Punitive and Statutory Damages."  Compl. ¶ 53.  These requests for relief are principally directed

to Nationstar, and do not seek relief against SLS.  *See* Compl. ¶¶ 52-55.

SLS filed an Answer to the Complaint on January 22, 2019.  ECF No. 3.  The Court held pre-trial conferences from time to time, at which Mr. Murray, representing himself, and SLS and Nationstar, each by counsel, appeared and were heard.  On November 11, 2019, after a period of discovery, SLS filed this Motion for Summary Judgment.  Mot., ECF No. 28.  On April 23, 2020, Mr. Murray filed opposition to this Motion.  Opp., ECF No. 33.  And on April 28, 2020, SLS filed a reply in further support of its Motion, including a statement of uncontested facts.  Reply, ECF No. 34.  On May 26, 2020, SLS supplemented its filings in support of the Summary Judgment Motion with an Affidavit of its counsel Robert Griswold, Esq., of Shapiro, DiCaro & Barak, LLC, attesting that the firm has physical possession of the Note (the "Griswold Affidavit").  ECF No. 37.

On June 2, 2020, the Court held a continued pre-trial conference and hearing on this Summary Judgment Motion and set a schedule for the parties to file supplemental briefs.  On July 1, 2020, Mr. Murray filed a supplemental opposition to the Summary Judgment Motion.  Supp. Opp., ECF No. 41.  On July 21, 2020, SLS filed a supplemental reply.  Supp. Reply, ECF No. 42.  And on December 3, 2020, the Court held a continued pre-trial conference and hearing on the Summary Judgment Motion, at which the parties appeared and were heard, and the record is now closed.

*This Summary Judgment Motion*

SLS seeks the entry of judgment in its favor on all of Mr. Murray's claims against it on three principal grounds.  These are first, that there is no genuine dispute as to a material fact that it has standing as a creditor and lienholder; second, that there is no genuine dispute as to a material fact that the lien on the Property is a valid and perfected lien; and third, that there is no

genuine dispute as to a material fact that it has settled with Mr. Murray with respect to all claims that it violated the automatic stay.  Mot. ¶ 20.

SLS first argues that the cases cited by Mr. Murray in the Complaint do not apply here.  It notes that Mr. Murray asserts that Bankruptcy Code Sections 522 and 544, taken together, allow him to step into the role of the Trustee to avoid the loan, and cites two cases, *In re Myers,* 262 B.R. 445 (Bankr. N.D. Ind. 2001) and *In re Trosky*, 371 B.R. 701 (Bankr. M.D. Pa. 2006), in support of this position.  Mot. ¶ 21.  SLS argues that each of those cases addresses an involuntary transfer of property.  Mot. ¶ 22.  And SLS notes that here, by contrast, there has been no transfer of the property, Mr. Murray remains in title to the Property, and the loan itself was a voluntary transaction.  Mot. ¶¶ 23-25.

SLS also points to the court's findings in *In re Myers*, and argues that the same analysis should apply here:

> "Section 522(h) only allows a debtor to prosecute actions designed to avoid a transfer of property.  It does not authorize suits seeking declaratory relief.  The present action seeks only declaratory relief – that Defendant's mortgage is an invalid forgery – and not the avoidance of any transfer to the Defendant. Accordingly, it is not based upon and states no claim under § 522(h)."

Mot. ¶ 26 (quoting *In re Myers*, 262 B.R. at 449).

To the same effect, SLS notes that in *In re Trosky*, the court determined that a voluntary mortgage was not a nonconsensual transfer, and was therefore explicitly excluded by Bankruptcy Code Section 522(g).  Mot. ¶ 28 (citing *In re Trosky*, 371 B.R. at 706).

SLS also points to a more recent decision in this District, *In re Dobbs*, where the court concluded that a debtor has no statutory right under Bankruptcy Code Section 522(h) to seek to avoid a voluntary mortgage.  Mot. ¶ 29 (citing *In re Dobbs*, 597 B.R. 74, 81 (Bankr. E.D.N.Y.

2019)).  For these reasons as well, SLS argues that the trustee's strongarm powers are not available to Mr. Murray here as a matter of law.  Mot. ¶¶ 31, 32.

Next, SLS argues that Mr. Murray's assertion that the loan is unperfected is wrong.  SLS states that the basis of Mr. Murray's assertion that the loan was unperfected is a typo in the name of the tenants corporation.  Mot. ¶ 32.  SLS acknowledges that the correct name of the tenants corporation is "35-21 79 St Tenants Corp," and that the name as set forth in Section 4 of the UCC-1 Financing Statement is "235-21 79 St Corp".  Mot. ¶¶ 33, 35.  But SLS points out that the UCC-1 Financing Statement lists the correct secured party, is recorded on the correct parcel, and correctly sets forth the property address.  Mot. ¶ 34.

SLS argues that under New York law, this minor error does not prevent the perfection of the loan, as the standard for errors affecting the validity of the perfection is whether the error renders the Financing Statement "seriously misleading."  Mot. ¶ 36.  SLS cites UCC Section 9-402(8), which states that a financing statement "substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."  Supp. Reply ¶ 30.

SLS points to decisions where courts have found that a financing statement with the wrong debtor's name was found not to be seriously misleading, including the decision of the Second Circuit in *In re Excel Stores, Inc.*, 341 F.2d 961 (2d Cir. 1965).  There, the court found that the description "Excel Department Stores" instead of "Excel Stores, Inc." did not render the financing statement "seriously misleading".  Supp. Reply ¶ 32.

And here, SLS argues that since the minor error in the name of the tenants corporation was not in the name of Mr. Murray or in the name of the secured party, it would not affect the indexing of the financing statement and ultimately does not render the financing statement

seriously misleading.  Mot. ¶¶ 38-39.  Viewed another way, SLS argues that as the information required for indexing is accurate, and a party searching for a UCC-1 financing statement would rely on that indexing to locate the statement, the financing statement was sufficient for the statement to be found in a reasonably diligent search, and the security interest is perfected. Supp. Reply ¶¶ 36-37.  For these reasons as well, SLS argues that Mr. Murray is not able to avoid SLS's validly perfected lien.  Mot. ¶ 42.

SLS also argues that it has standing to assert its rights with respect to the loan because it has physical possession of the Note, as evidenced by the uncontroverted Griswold Affidavit. Mot. ¶ 43, Reply ¶ 13.  As physical possession of the Note is sufficient under New York law to prove standing, SLS argues that it has standing on the loan as evidenced by the Griswold Affidavit attesting to its physical possession of the Note.[2]

In addition, SLS asserts that Mr. Murray cannot establish that he is authorized to exercise the avoidance powers of a Chapter 7 trustee under Bankruptcy Code Sections 522(h) and 522(g) to avoid SLS's validly perfected lien, because that relief is not available where the lien at issue is consensual and no involuntary transfer of property has occurred.  Mot. ¶¶ 21-31.

---

[2]  When this Motion was made, SLS proposed to provide the original Note at a hearing for review by the Court.  *See* Mot. ¶ 44 (stating that "[c]ounsel to SLS will have in hand possession of the original Note at the return date for this [Motion] for in camera review"); Reply ¶ 13 (stating that "SLS has had original copies of the note and mortgage in hand in court on multiple occasions, and has indicated an intent to present the original loan documents for the Court's review" at the argument on this Motion).  But soon thereafter, due to restrictions on in-court proceedings brought about by the COVID-19 public health emergency, this Court began to conduct all proceedings remotely, via telephone and video.  As of this date, those restrictions remain in effect.  *See In re: Coronavirus/Covid-19 Pandemic*, Temporary Suspension of Jury Trials and Grand Jury Selections, and Other Limits to In-person Proceedings, Admin. Order 2020-26, E.D.N.Y (Chief Dist. J. Nov. 24, 2020) (ordered that for the period November 24, 2020 through January 19, 2021, all civil proceedings shall be conducted remotely by telephone or video conference).

And finally, SLS argues that the settlement that it reached with Mr. Murray, as reflected in the Settlement Agreement among Mr. Murray, SLS, and others resolves any claims that Mr. Murray may have had arising from an asserted violation of the automatic stay, including the alleged violations set forth in the Complaint. Mot. ¶¶ 50-51. SLS also notes that it is not specifically named or referenced in the Complaint with respect to the Cause of Action asserting violations of the automatic stay. Mot. ¶¶ 46-48. For these reasons as well, SLS argues that it is entitled to summary judgment on Mr. Murray's stay violation claims. Mot. ¶ 50.

*Mr. Murray's Opposition*

Mr. Murray opposes SLS's Motion for Summary Judgment. On April 23, 2020, Mr. Murray filed an Opposition to SLS's Motion, and on July 1, 2020, he filed a Supplemental Opposition. Mr. Murray argues that his cooperative shares are personal property, and states that SLS's repeated "assertions" that these shares constitute real property are tantamount to "misrepresentation." Opp. ¶ 6.

Mr. Murray also argues that SLS and previous servicers violated the Real Estate Settlement Procedures Act ("RESPA"), as implemented by Regulation X, based on the argument, among others, that HSBC did not comply with the necessary time frames to respond to Requests for Information and Notices of Error. Opp. ¶¶ 7-14. And he states that they violated a "condition precedent" in that the lender did not send him a 30-day notice prior to accelerating the loan and commencing a foreclosure action. Opp. ¶¶ 15-17. Mr. Murray also argues that the loan is unconscionable and is a predatory loan. Opp. ¶¶ 24-29.

Next, Mr. Murray argues that SLS's Motion contains statements that are not supported by evidence. And he asserts that he is unable to prove this at this time, because the Defendants have not responded adequately to his discovery requests. Opp. ¶ 30. Mr. Murray disputes the

accuracy of the Griswold Affidavit stating that SLS has physical possession of the Note, and argues, among other things, that SLS has only a copy, not the original Note, and therefore the "lender" is not a holder in due course pursuant to UCC § 3-302.  Opp. ¶¶ 38-42.  And he requests the opportunity to inspect the original document with the wet ink signature.  Supp. Opp. ¶ 20.  He states that he "doubts counsel to SLS has in hand possession of the Note, respectfully demanding inspection of any alleged wet ink note."  Supp. Opp. ¶ 20.  Mr. Murray further contends that the Note should have an attached "allonge" that includes "further indorsements" for each transfer, and this "allonge" is missing.  Opp. ¶¶ 37-38.

Mr. Murray also disputes that SLS has established that the lien is perfected.  He points to the error in the name of the tenants corporation, among other errors, and argues that, as set forth in the Complaint, the lien and its assignments were improperly recorded due to these errors and misrepresentations.  And he states that the asserted RESPA violations, and other new matters asserted in his opposition, "were contextual to the issue of standing and party of interest, germane and material to" the Complaint.  Supp. Opp. ¶ 18.

And finally, in his Affidavit in Supplemental Opposition to Motion for Summary Judgment, Mr. Murray requested that the Court take judicial notice of correspondence received by him from Nationstar dated October 15, 2020 and October 16, 2020, which contain language suggesting, in substance, that Nationstar, not SLS, is the servicer of the loan.  Aff. Supp. Opp., ECF No. 48 ¶ 2.  Specifically, Mr. Murray asks the Court to consider this correspondence as additional evidence of the continuing conflation of the Defendants as the servicers of the loan.  Aff. Supp. Opp. ¶ 26.

## **The Applicable Law**

### *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56, made applicable here by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In considering summary judgment, a fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  And a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion.  *See Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (observing that the court's role is "to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments").

Where a defendant seeks summary judgment, it must demonstrate that there is no genuine dispute as to a material fact as to at least one necessary element of its claim.  If it does not, then summary judgment will be denied.  *See Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008), *aff'd in part, remanded in part*, 375 F. App'x 73 (2d Cir. 2010) (citing *Anderson*, 477 U.S. at 250 n.4) (stating that summary judgment should be denied where the moving party does not meet its initial burden to show the absence of a genuine dispute as to a material fact with respect to each essential element of the claim).  But where the defendant meets its burden to show that there is no genuine dispute as to a material fact as to at least one necessary element of the plaintiff's claim, then it is entitled to judgment as a matter of law on that claim.

Once the moving party satisfies its initial burden, "the burden then shifts to the

nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial." *Silverman v. United Talmudical Acad. Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011).  As the Supreme Court has observed, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In addition, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).  *See Anderson*, 477 U.S. at 249-50 (observing that "if the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted").  "Statements in the pleadings alone are not sufficient to meet this burden." *In re Allou Distribs., Inc.*, 446 B.R. at 49.  Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived  'to put up or shut up.'" *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008), *aff'd*, 370 F. App'x 197 (2d Cir. 2010) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), *cert. denied*, 540 U.S. 811 (2003)). "Unsupported allegations in the pleadings thus cannot create a material issue of fact." *Id.*

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' [and] designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  A party "must 'set forth' by affidavit or other evidence 'specific facts' to survive a motion for summary judgment . . . and must ultimately support any contested facts with evidence adduced at trial." *Bennett v. Spear*, 520 U.S. 154, 168 (1997)

(quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).  As one court observed, "[t]he non-moving party may not establish that there is a genuine issue to be resolved at trial through mere allegations or denials of the adverse party's pleadings, but rather must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law." *Beare v. Millington*, 2014 WL 1236750, at *3 (E.D.N.Y. Mar. 25, 2014), *aff'd*, 613 F. App'x 56 (2d Cir. 2015).

### Secured Creditor Standing Under New York Law

It is well established under New York law that possession of the original note is sufficient to establish a secured creditor's standing, even where there is an alleged defect in the chain of title.  As the New York Court of Appeals has observed, "physical possession of the original note prior to commencement of this . . . action . . . was legally sufficient to establish standing." *Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 360, 34 N.E.3d 363, 365 (2015).  *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214 (2d Cir. 2016) (acknowledging *Aurora* and finding that the secured creditor was not required to provide details pertaining to the transfer of the note in order to establish standing).

### UCC Lien Perfection Under New York Law

Article 9 of New York's Uniform Commercial Code, states, in relevant part:

(a) [Minor errors and omissions.]  A financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading.

(b) [Financing statement seriously misleading.]  Except as otherwise provided in subsection (c), a financing statement that fails sufficiently to provide the name of the debtor in accordance with Section 9-503(a) is seriously misleading.

(c) [Financing statement not seriously misleading.]  If a search of the records of the filing office under the debtor's correct name, using the filing office's standard search logic, if any, would disclose a financing statement that fails sufficiently to

provide the name of the debtor in accordance with Section 9-503(a), the name
provided does not make the financing statement seriously misleading.

NY UCC § 9-506.

UCC § 9-502(a), provides, in relevant part, that "a financing statement is sufficient only
if it (1) provides the name of the debtor; (2) provides the name of the secured party or a
representative of the secured party; and (3) indicates the collateral covered by the financing
statement."  NY UCC § 9-502(a).

*Avoidance, Recovery, and Exemption of Transferred Property*

Bankruptcy Code Section 522(g)(1) provides, in substance, that a debtor may claim an
exemption in property that the trustee recovers, provided that the debtor's transfer of the property
"was not a voluntary transfer of such property" and "the debtor did not conceal such property."
11 U.S.C. § 522(g)(1).

Bankruptcy Code Section 522(h) provides, in substance, that where a trustee declines to
avoid and recover a transfer of a debtor's property, a debtor may "avoid a transfer of property . . .
or recover a setoff" to the extent that the debtor could have claimed an exemption in that
property.  11 U.S.C. § 522(h).

And Bankruptcy Code Section 544(a)(3) provides:

The trustee shall have, as of the commencement of the case, and without regard to
any knowledge of the trustee or of any creditor, the rights and powers of, or may
avoid any transfer of property of the debtor or any obligation incurred by the
debtor that is voidable by a bona fide purchaser of real property, other than
fixtures, from the debtor, against whom applicable law permits such transfer to be
perfected, that obtains the status of a bona fide purchaser and has perfected such
transfer at the time of the commencement of the case, whether or not such
purchaser exists.

11 U.S.C. § 544(a).

Bankruptcy Code Section 506(d)(1), in turn, provides that a claim for a secured lien
against a debtor that is not a secured claim is void unless "such claim was disallowed only under

section 502(b)(5) or 502(e) of this title."  11 U.S.C. § 506(d).  And Section 502(e) addresses the disallowance of a claim of a secured creditor "to the extent that such creditor's claim against the estate is disallowed."  11 U.S.C. § 502(e)(1).

### Discussion

By this Motion, SLS asks this Court to enter judgment in its favor on all of the claims asserted against it in the Complaint.  And as described above, SLS points to three grounds that, it asserts, entitle it to that relief – first, it has standing as a secured creditor; second, its security interest is perfected; and third, any claims relating to alleged stay violations have been settled. Mot. ¶ 20.

In his Complaint, Mr. Murray asserts a First Claim for Relief, a Second Claim for Relief, and Consolidated Claims for Relief.  In his First Claim for Relief, he asserts, in substance, that the HSBC Mortgage has been satisfied and paid in full.  Compl. ¶ 42.  He also asserts that the HSBC Mortgage was used "to extort amounts paid from inception or closing till August 2014," in addition to the full payment that was received by Nationstar on August 10, 2017.  Compl. ¶ 43.  And he asserts that the HSBC Mortgage should be avoided pursuant to Bankruptcy Code Section 506(d), and preserved for the benefit of his bankruptcy estate pursuant to Bankruptcy Code Section 551.  Compl. ¶ 45.

In his Second Claim for Relief, Mr. Murray asserts, in substance, that for many of these same reasons, the Court should declare that the Defendants should be barred from "any and all claims to the estate or interest in the Property," that he "is the lawful owner and vested in title to the Property . . . free and clear of the Note and Mortgage," that the Note and Mortgage are "void, cancelled and discharged pursuant" to Bankruptcy Code Sections 506(d) and 544, and that the

HSBC Mortgage should be cancelled and discharged, and preserved for the benefit of his bankruptcy estate.  Compl. ¶ 52.

And in his Consolidated Claims for Relief, Mr. Murray incorporates by reference seven motions made in his bankruptcy case, including motions for contempt, sanctions, lost wages, costs, fees, and actual treble, punitive, and statutory damages.  Compl. ¶ 53.  Notably, as set forth in the Complaint, one of those motions – the Motion to Cancel Sale and for Contempt and Sanctions – sought relief from SLS, and as the Complaint states, "[the request for] relief from SLS . . . has been settled."  Compl. ¶ 15(e).

_Whether SLS Has Shown that It Is Entitled to Summary Judgment on the First and Second Claims for Relief_

SLS seeks summary judgment on Mr. Murray's First and Second Claims for Relief for two principal reasons.  First, it argues that there is no genuine dispute as to a material fact that it has standing as a creditor and the current lienholder on Mr. Murray's cooperative shares.  And second, it argues that there is no genuine dispute as to a material fact that its security interest is perfected.  In light of those circumstances, SLS also argues that there is no genuine dispute as to a material fact that Mr. Murray cannot use the avoidance powers of a Chapter 7 trustee under Bankruptcy Code Sections 522(h) and 522(g) to avoid SLS's validly perfected lien, because its lien is consensual and no involuntary transfer of property has occurred.  The Court considers these arguments in turn.

Whether SLS Has Shown that It Has Standing as a Creditor and Lienholder.  SLS argues that there is no genuine dispute as to a material fact that it has standing as a creditor by virtue of its physical possession of the Note executed on March 20, 2008 by Mr. Murray and HSBC Mortgage Corporation.  SLS supports this argument with the statement in its Motion that "Counsel to SLS will have in hand possession of the original Note."  Mot. ¶ 44.  Following the

Court's adoption of remote hearing proceedings in mid-March 2020 as a consequence of the COVID-19 public health emergency, SLS supplemented the record with the Griswold Affidavit, in which Mr. Griswold attests that his firm has physical possession of the original Note that is endorsed in blank, that the Note is stored in a fireproof safe in its office in Melville, NY, and that he has personally reviewed the Note.  Griswold Aff. ¶¶ 9-12, 14.

Mr. Murray responds that he "doubts counsel to SLS has in hand possession of the Note" and demands the opportunity to inspect the original, "wet ink" document.  Supp. Opp. ¶ 20.  He also states that the Note does not contain the required "allonge" recording the transfer of "indorsements."  Opp. ¶ 37.  At the same time, Mr. Murray recognizes that a person or entity who has "physical possession of the note," and has the note "in the holder's name, indorsed to the holder, or indorsed in blank," is a holder in due course of the note under Section 1-201 of New York's Uniform Commercial Code.  Opp. ¶ 31.

To prevail on this aspect of its Motion, SLS must show that there is no genuine dispute as to a material fact that it has standing as a creditor and lienholder with respect to Mr. Murray's cooperative shares.  As noted above, a fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at 248.  And a dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

Section 1-201(b)(21) of New York's UCC defines a "holder" as follows:

(A) the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession; or (B) the person in possession of a document of title if the goods are deliverable either to bearer or to the order of the person in possession.

N.Y. UCC § 1-201(b)(21).

Consistent with this, it is well established that under New York law, possession of the original note is sufficient to establish standing under the note, even where there is an alleged

defect in the chain of title.  *Aurora Loan Servs.*, 25 N.Y.3d at 360, 34 N.E.3d at 365 (holding that proof of possession of the original note is sufficient to establish standing).  *See OneWest Bank, N.A.*, 827 F.3d at 223 (citing *Aurora* and finding that the secured creditor was not required to provide details pertaining to the transfer of the note in order to establish standing).

It is similarly well established, in the context of a secured creditor, that "to have standing, it is not necessary to have possession of the mortgage . . .  [t]his conclusion follows from the fact that the note, and not the mortgage, is the dispositive instrument that conveys standing to foreclose under New York law."  *Aurora Loan Servs.*, 25 N.Y.3d at 360, 34 N.E.3d at 366.  Put another way, possession of the original note confers standing both as a creditor and a lienholder, because, as stated by the Court of Appeals, "[a] transfer in full of the obligation automatically transfers the mortgage as well unless the parties agree that the transferor is to retain the mortgage."  *Id.* (citing *Restatement (Third) of Property* § 5.4)).

And notably, pursuant to Federal Rule of Civil Procedure 56(c)(4), made applicable here by Bankruptcy Rule 7056, courts may consider "an affidavit or declaration used to support or oppose a motion . . . made on personal knowledge, [that sets] out facts that would be admissible in evidence, and [shows] that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).

To prevail on this aspect of its Motion, SLS must show that there is no genuine dispute as to a material fact that SLS has standing as a secured lienholder of Mr. Murray's cooperative shares.

And so here, the record shows that SLS's standing as a creditor and lienholder turns on whether it has physical possession of the Note.  SLS has supported its motion with the affidavit of its counsel, Mr. Griswold, in which he attests, based on his personal knowledge and under the

penalty of perjury, that his firm, Shapiro, DiCaro & Barak, LLC, has physical possession of the Note, endorsed in blank, and that he has personally reviewed the document.  Griswold Aff. ¶¶ 9-12, 14.

In particular, Mr. Griswold states that "SDB's business records, and my recollection, confirm that the original collateral file was received by SDB on July 18, 2019," and that he has "personally reviewed the original collateral file, including the Note, in preparation for the filing of the [Summary Judgment Motion]."  Griswold Aff. ¶¶ 11-12.  A copy of the original Note is also attached as an exhibit.  Griswold Aff. ¶ 13 and Exh. A.  Mr. Griswold also attests that SLS intended to present the original Note for inspection by the Court at an in-person hearing on this Motion, but COVID-19 restrictions prevented any in-person hearings from occurring at the time. Griswold Aff. ¶¶ 3-4.[3]

Mr. Murray responds that based on the asserted "deficiencies in the assignments and chain of title under New York law," the record "is not sufficient to establish standing."  Supp. Opp. ¶ 20.  He also states that he "doubts counsel to SLS has in hand possession of the Note," but does not support that "doubt" with grounds to question the veracity of Mr. Griswold's statements.  Supp. Opp. ¶ 20.  And more generally, he questions whether SLS and others have complied with the applicable statutes and practices that govern lenders, including RESPA and Regulation X.  Opp. ¶¶ 7-14, 28.

Mr. Murray also suggests that he has been the victim of "identity theft and possible contradictory or false information being provided regarding the mortgage transaction to the

---

[3]  As of the date of this Memorandum Decision, these restrictions remain in place.  *See In re: Coronavirus/Covid-19 Pandemic*, Temporary Suspension of Jury Trials and Grand Jury Selections, and Other Limits to In-person Proceedings, Admin. Order 2020-26, E.D.N.Y (Chief Dist. J. Nov. 24, 2020) (ordered that for the period November 24, 2020 through January 19, 2021, all civil proceedings shall be conducted remotely by telephone or video conference).

IRS."  Supp. Opp. ¶ 29.  But here again, he has not connected those arguments to the question of whether SLS has established that it has standing as a creditor and lienholder based on its physical possession of the Note.

The record also shows that Mr. Griswold's affidavit meets the requirements of Rule 56(c)(4), permitting a court to consider "an affidavit or declaration used to support or oppose a motion . . . made on personal knowledge, [that sets] out facts that would be admissible in evidence, and [shows] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In particular, the record shows that Mr. Griswold has declared that he has personal knowledge of SLS delivering the Note to Shapiro, DiCaro & Barak, LLC, personal knowledge of his and his firm's receipt and handling of the document, and personal knowledge based on his own review of the original Note and corresponding files.  He states that his firm's business records, and his own recollection, "confirm that the original collateral file was received" by the firm, and has been maintained "in the firm's fireproof safe."  Griswold Aff. ¶ 11.  And Mr. Griswold confirms that "the original note has been endorsed in blank, and is being held by SDB on behalf of SLS, and has remained in SDB's possession since its receipt on July 18, 2019." Griswold Aff. ¶ 14.  Additionally, a copy of the original Note is annexed to the Affidavit.  *See* Griswold Aff. ¶ 13 and Exh. A.

The record also shows that Mr. Griswold has set out facts that would be admissible in evidence.  There can be no doubt that the facts surrounding the possession and handling of the original Note are central to the question of SLS's standing, and are admissible as evidence.

And finally, the record shows that Mr. Griswold is competent to testify on the matters stated.  He states that he is a "Bankruptcy Attorney at Shapiro, DiCaro & Barak, LLC . . . and am

authorized to sign this Affidavit on behalf of [the firm]."  Griswold Aff. ¶ 1.  He also addresses

the business records practices of the firm, and states:

> As a law firm representing secured creditors, SDB maintains up-to-date records
> concerning the cases it handles in its electronic record-keeping system.  SDB is a
> business and maintains records in the course of its regularly conducted business
> activities and the records are made at or near the time of the event by or from
> information transmitted by a person with personal knowledge of the event.  It is
> SDB's regular practice to keep such records in the ordinary course of a regularly
> conducted business activity.

Griswold Aff. ¶ 6.  And he attests that as an attorney experienced in handling bankruptcy

matters, he "regularly need[s] to review loan documents."  Griswold Aff. ¶ 8.

As noted above, Mr. Murray avers that he "doubts counsel to SLS has in hand possession

of the Note," but he has not supported that "doubt" with persuasive evidence or argument that

show, or even suggest, that there are grounds to discredit Mr. Griswold's statements.  Supp. Opp.

¶ 20.  At this stage in these proceedings, his speculation is simply not sufficient to create a

genuine dispute as to a material fact.

For these reasons, and based on the entire record, SLS has shown that there is no genuine

dispute as to a material fact that it has standing as a creditor and lienholder based on the physical

possession of the original Note by its counsel.

<u>Whether SLS Has Shown that Its Security Interest Is Perfected.</u>  SLS argues that there is

no genuine dispute as to a material fact that its lien is valid and perfected.  It acknowledges that

there is a typographical error in the name of the tenants corporation in Section 4 of the UCC-1

Financing Statement, where it is identified as "235-21 Tenants Corp" rather than "35-21 Tenants

Corp."  But SLS points to the fact that the UCC-1 Financing Statement lists the correct secured

party, the correct parcel, and the correct property address.  Mot. ¶¶ 33-35.  For these reasons, it

urges, the error is not "seriously misleading" but instead, is the kind of minor mistake that does not invalidate the perfection of the loan.  Mot. ¶¶ 36-40.

Mr. Murray responds that errors in the UCC-1 Financing Statement and UCC-3 Financing Statement Amendment render the perfection of the loan invalid.  As to the UCC-1 Financing Statement, he points to the fact that the correct name of the tenants corporation is "35-21 79th St Tenants Corp.", but the description part in Sections 4 and 25, respectively entitled Collateral Description and Name of Cooperative Organization, lists "235-21 79 St Tenants Corp", which he describes as "a non-existent corporation."  Supp. Opp. ¶¶ 5-6.  *See* Compl. ¶ 29. And the UCC-3 Financing Statement Amendment from 2013, he argues, lists the Property Data incorrectly as "real estate" as opposed to "personal property."  Supp. Opp. ¶ 8.  Mr. Murray contends that these errors prevent the lien from attaching to the shares he owns of 35-21 79th St Tenants Corp.  Supp. Opp. ¶¶ 16-17.

To prevail on this aspect of its Motion, SLS must show that there is no genuine dispute as to a material fact that its security interest is valid and perfected.  And here again, a fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson,* 477 U.S. at 248.  And a dispute is "'genuine'. . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

At the outset, here, the record shows – and Mr. Murray and SLS do not appear to dispute – that the UCC-1 Financing Statement contains an error in the name of the tenants corporation, which is the issuer of the cooperative shares that are the subject of SLS's lien.  The name of that entity is "35-21 79th St Tenants Corp.", but it is identified in Sections 4, entitled Collateral Description, and Section 25, entitled Name of Cooperative Organization, as "235-21 79 St Tenants Corp".  Just the same, the record shows – and Mr. Murray and SLS do not appear to

dispute – that the UCC-1 Financing Statement correctly sets forth the borrower's name, the secured creditor's name, the parcel, and the property address.  But the parties dispute the legal consequence of these errors, and in particular, whether this gives rise to a defect in the perfection of the lien.

Pursuant to NY UCC Section 9-502, "[a] financing statement is sufficient only if it: (1) provides the name of the debtor; (2) provides the name of the secured party or a representative of the secured party; (3) indicates the collateral covered by the financing statement; and (4) in the case of a cooperative interest, indicates the number or other designation and the street address of the cooperative unit."  NY UCC § 9-502.

There can be no doubt that accuracy is critically important in UCC financing statements. These statements put each and every interested party on notice that an asset is encumbered by a lien.  If that notice is ineffective, then so, very likely, is the security interest.  But as the UCC itself recognizes, not all errors are viewed in the same light.  Instead, they fall into two categories:  minor errors, which do not prevent the perfection of a security interest; and errors that "make the financing statement seriously misleading," which can render the financing statement ineffective and the security interest unperfected.  NY UCC § 9-506.

As Section 9-506 of New York's UCC states, "a financing statement substantially satisfying the requirements of this part is effective, even if it has minor errors or omissions, unless the errors or omissions make the financing statement seriously misleading."  NY UCC § 9-506(a).  As one example, a financing statement is deemed "seriously misleading" if it "fails sufficiently to provide the name of the debtor."  NY UCC § 9-506(b).  And a financing statement is "not seriously misleading" if "a search of the records of the filing office under the debtor's

correct name, using the filing office's standard search logic, if any," would identify it.  NY UCC § 9-506(c).

Pursuant to NY UCC Section 9-502, "[a] financing statement is sufficient only if it: (1) provides the name of the debtor; (2) provides the name of the secured party or a representative of the secured party; (3) indicates the collateral covered by the financing statement; and (4) in the case of a cooperative interest, indicates the number or other designation and the street address of the cooperative unit."  NY UCC § 9-502(a).  Taken together, these provisions indicate that minor errors within the UCC financing statements are acceptable and would not affect the perfection or validity of the lien, unless the errors are "seriously misleading."

Applying these provisions, courts agree that the adequacy of notice provided by a UCC-1 financing statement is the primary determinant of whether the error is "minor" or "seriously misleading."  As one New York state appellate court found, the difference between a "minor error" and one that is "seriously misleading" is "whether a reasonably diligent searcher would be likely to discover a financing statement indexed under the correct name" or at least "be put . . . on inquiry."  *TMMB Funding Corp. v. Associated Food Stores, Inc.,* 136 A.D.2d 540, 542-43 (N.Y. App. Div. 2d Dep't 1988).  And as a bankruptcy court observed, "the determination of whether financing statements are seriously misleading is essentially a question of fact which must be decided on a case-by-case basis."  *In re Darling Lumber, Inc.,* 56 B.R. 669, 673 (Bankr. E.D. Mich. 1986) (citations omitted).

As one example of this review, the Ninth Circuit affirmed a bankruptcy court's determination that a financing statement that should have represented the borrower as a corporation, "McCauley's Reprographics, Inc.," was "seriously misleading" in that it "improperly identified the debtor as the partnership, McCauley's Reprographics and Mapping,

which preceded the corporation." *In re McCauley's Reprographics,* 638 F.2d 117, 118 (9th Cir.

1981).  The court noted that in "the peculiar circumstances presented in this case, . . . the

financing statement may not have given notice that the debtor could in fact have been the

corporation." *In re McCauley's Reprographics,* 638 F.2d at 119.

Another example is provided by the Second Circuit's decision in *In re Excel Stores, Inc.*,

341 F.2d 961 (2d Cir. 1965).  There, considering the question of what would amount to a

"seriously misleading" error in a financing statement, the court concluded that the use of the

name "Excel Department Stores" instead of the correct name of "Excel Stores, Inc." in entering

into a conditional sale contract was a "minor error" and "not seriously misleading," where the

contract was signed by the appropriate corporate officer, and a creditor or other interested person

would be "put on notice that a lien against Excel might be outstanding."  *In re Excel Stores, Inc.,*

341 F.2d at 963.

And in *Admor's Office World, Inc. v. Bank Leumi Trust Co. of New York (In re Admor's

Office World, Inc.)*, 1992 WL 350577 (Bankr. S.D.N.Y. Nov. 12, 1992), the bankruptcy court

found that a UCC-1 financing statement identifying the debtor as "Admor Office Machines, Inc."

instead of "Admor's Office World, Inc." was not seriously misleading and was effective to

perfect a lien.  As the court observed, "[the] Defendant's financing statement was not seriously

misleading, because a reasonably diligent searcher would likely discover the financing statement

indexed under the correct name or at least be put on inquiry as to its potential existence."  *In re

Admor's Office World, Inc.*, 1992 WL 350577 at *5.

Here, the record shows that the errors in the UCC-1 Financing Statement – adding a "2"

and omitting a "." in the name of the issuing entity of the cooperative shares, 35-21 Tenants

Corp. – were not errors in the name of the debtor.  Nor were these errors in the identity of the

secured creditor, the parcel, or the address of the real property comprising the asset of the cooperative association.  Instead, each of these was correctly identified in the document.  Rather, these were errors in the name of the entity identified in Section 4, Collateral Description, and Section 25, Name of Cooperative Organization.

Applying the standards set forth in *In re Admor's Office World, Inc.* and other cases, it is clear that these errors would not have prevented "a reasonably diligent searcher" from "discover[ing] a financing statement indexed under the correct name or at least be put on inquiry as to its potential existence" for at least two reasons.  *Id.*  First, the errors occur in a portion of the UCC-1 Financing Statement that is not likely to interfere with the prospect of identifying the statement in a reasonably diligent search.  And second, viewed in light of the criteria applied by other courts, and in the context of where the information is set forth, they are more accurately viewed as "minor" than as rendering the statement "seriously misleading."  Viewed another way, and consistent with the Second Circuit's conclusions in *In re Excel Stores, Inc.,* this error, in these Sections of the Statement, would not prevent a creditor from being "put on notice that a lien . . . might be outstanding."  *In re Excel Stores, Inc.*, 341 F.2d at 963.

And here the record also shows that the asserted error in the UCC-3 Financing Statement Amendment at Paragraph 6 – describing the cooperative shares collateral as "real property" rather than "personal property" – is similarly not an error in the name of the debtor, the identity of the secured creditor, the parcel, or the address of the real property comprising the asset of the cooperative association.  And a review of the UCC-3 Financing Statement Amendment shows that the property type listed under the Property Data designates it as a "Single Residential Coop Unit."  Supp. Opp. Exh. A.  As the Recording and Endorsement Cover Page states, the "Property

Data" description correctly identifies the "Property Type" as "SINGLE RESIDENTIAL COOP UNIT," the "Address" as "35-46 79TH ST" and the "Unit" as "4E."

At the outset, it is far from clear that there is an error in the UCC-3 Financing Statement Amendment.  And here again, applying the standards set forth in *In re Admor's Office World, Inc.* and undertaking the appropriate fact-based inquiry urged by many courts, it is evident that "a reasonably diligent searcher" would be "likely to discover a financing statement indexed under the correct name or at least be put on inquiry as to its potential existence."  *In re Admor's Office World, Inc.*, 1992 WL 350577 at *5.

For these reasons, and based on the entire record, SLS has shown that there is no genuine dispute as to a material fact that it has a perfected lien on Mr. Murray's cooperative shares.

<u>Whether SLS Has Shown that Mr. Murray Cannot Use Bankruptcy Code Sections 522(h) and 522(g) To Avoid Its Validly Perfected Lien.</u>  SLS argues that there is no genuine dispute as to a material fact that Mr. Murray cannot call upon the avoidance powers of a Chapter 7 trustee under Bankruptcy Code Sections 522(h) and 522(g) to avoid its validly perfected lien, because its lien is consensual, and no involuntary transfer of property has occurred.

Mr. Murray seeks to avoid SLS's lien on his cooperative shares on grounds that the lien is not perfected, and that he can step into the role of the trustee to avoid the lien by using the trustee's strongarm powers under Bankruptcy Code Sections 522(g), 522(h), and 544(a)(3).  He argues, in substance, that he has a homestead exemption in the value of his cooperative shares, that the trustee has not sought to avoid the lien on those shares, and as a consequence, he may step into the shoes of the trustee to do so.

Mr. Murray also disputes that his entry into the HSBC Mortgage was a consensual transaction, and more generally, that he voluntarily executed the Note, Security Agreement,

Proprietary Lease, and Assignment of Proprietary Lease.  He argues, among other things, that his obligations under those agreements are the product of predatory lending and an unconscionable contract, and that the attorney representing him at the closing misrepresented the nature of the transaction.  *See* Opp. ¶¶ 24-29: July 29, 2020 Hearing Tr. at 28:13-23.

SLS responds that both the Bankruptcy Code provisions and the cases upon which Mr. Murray relies do not support his position, because they concern situations where there was an *involuntary* transfer of the debtor's property, and here, that simply did not occur.

Bankruptcy Code Section 522(g) permits a debtor to claim an exemption in property that the trustee recovers, so long as the debtor's transfer of the property "was not . . . voluntary" and "the debtor did not conceal" the property.  11 U.S.C. § 522(g)(1).

And Bankruptcy Code Section 522(h) permits a debtor:

[to] avoid a transfer of property . . . to the extent that the debtor could have exempted such property . . . if the trustee had avoided such transfer, if (1) such transfer is avoidable by the trustee under section 544 . . .; and (2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).

Finally, Bankruptcy Code Section 544(a)(3) provides that a trustee may avoid a transfer of property of the debtor that could be avoided by:

a bona fide purchaser of real property, . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

Here, the record shows that at the outset, SLS's lien on Mr. Murray's cooperative apartment shares was a consensual lien, and the product of a voluntary, not an involuntary, transaction.  The record also shows that Mr. Murray signed and executed the Note, Security

Agreement, a Proprietary Lease and an Assignment of Proprietary Lease.  The minor errors that have been identified in the UCC-1 Financing Statement and UCC-3 Financing Statement Amendment do not change the consensual nature of the transaction.  And Mr. Murray's assertions with respect to his representation by counsel at the closing, and as to the asserted predatory and unconscionable nature of the loan, simply do not have support in the record, and do not create a genuine dispute as to a material fact as to his claims here.

Viewed another way, the record shows that there is no genuine dispute as to a material fact that there was not a transfer of the debtor's property that "was not . . . voluntary."  11 U.S.C. § 522(g)(1).

The cases cited by both Mr. Murray and SLS are consistent with this conclusion.  In *In re Myers*, the bankruptcy court held that a debtor and his spouse could not use the trustee's avoidance powers to declare their mortgage invalid on grounds that the spouse's signature had been forged.  *In re Myers*, 262 B.R. at 448.  There, the court reasoned that Section 522(h) is designed to avoid a transfer of property, not to authorize suits for declaratory judgment to invalidate a mortgage.  *In re Myers*, 262 B.R. at 449.

And in *In re Trosky*, the bankruptcy court held that because the debtors could not have exempted any property under Section 522(g)(1), they similarly could not avoid a transfer of property under Section 522(h).  *In re Trosky*, 371 B.R. at 706.  As the court observed:

> The shortcoming in the Debtors' argument lies in the fact that there was no involuntary transfer of the Debtors' property.  The transfer of property here was the debtors voluntarily mortgaging their property interests to [the creditor's] predecessors . . . Because the Debtors could not have exempted any property under § 522(g)(1), they cannot avoid a transfer of property under § 522(h).

*Id.  See In re Dobbs*, 597 B.R. at 75-76 (observing that a debtor's "limited right to bring an avoidance action under § 522(h) . . . is applicable so long as the transfer or granting of the mortgage lien was not voluntary and the debtor did not conceal the property transferred.").

For these reasons, and based on the entire record, SLS has shown that there is no genuine dispute as to a material fact that Mr. Murray cannot use Bankruptcy Code Sections 522(h) and 522(g) to avoid its validly perfected lien.

*          *          *

In sum, SLS has established that as a matter of law, it is a creditor with standing and a secured creditor, pursuant to the Note and Mortgage.  Simply put, it is a creditor with standing because it has shown that it has possession of the Note, and it is a secured creditor because it has shown that its security interest is perfected.  And it has shown that Mr. Murray cannot use Bankruptcy Code Sections 522(h) and 522(g) to avoid SLS's validly perfected lien.

But in order to determine whether SLS is entitled to summary judgment on Mr. Murray's claims to cancel and discharge the Note and Mortgage on his cooperative apartment, the Court must consider several additional matters that are put in issue by SLS's Motion for Summary Judgment and Mr. Murray's response.

These are whether SLS has shown that it is entitled to summary judgment on the matters asserted in the Consolidated Claims for Relief because they have been settled; and whether SLS has shown that it is entitled to summary judgment on Mr. Murray's alleged satisfaction and payment in full of the loan.  The Court also must consider whether the new assertions that Mr. Murray raises in his Opposition and Supplemental Opposition amount to claims against SLS in this action.

The Court considers these matters in turn.

33

_Whether SLS Has Shown that It Is Entitled to Summary Judgment on the Consolidated Claims for Relief_

SLS seeks summary judgment on Mr. Murray's Consolidated Claims for Relief on grounds that, to the extent that those claims seek relief against it, they are the subject of a settlement agreement that was entered into between Mr. Murray, SLS, and its counsel at the time Gross Polowy, LLC, and have been released. As a consequence of that settlement, SLS argues, those claims cannot be asserted against it here in this adversary proceeding.

Mr. Murray acknowledges that he, SLS, and Gross Polowy, LLC entered into the Settlement Agreement. But he also appears to suggest, in substance, that for all of the reasons he opposes SLS's request for summary judgment on his First and Second Claims for Relief, he also opposes its request for summary judgment on his Consolidated Claims for Relief. July 29, 2020 Hearing Tr. at 20:22-21:11. And he argues that the record demonstrates a "continued pattern of claimed typos, inconsistencies, contradictions and misrepresentations regarding material issues of fact in dispute." Supp. Opp. ¶ 22.

In his Consolidated Claims for Relief, Mr. Murray incorporates by reference seven motions made in his bankruptcy case. These include motions for contempt, sanctions, lost wages, costs, fees, and actual treble, punitive, and statutory damages. Compl. ¶ 53. As the Complaint states, one of those motions – the Motion to Cancel Sale and for Contempt and Sanctions – sought relief from SLS, and "[the request for] relief from SLS . . . has been settled." Compl. ¶ 15(e).

A review of the docket in Mr. Murray's bankruptcy case confirms that in each of the motions that comprises the Consolidated Claims for Relief, Mr. Murray either did not seek relief against SLS, or Mr. Murray and SLS have settled the claims set forth in the motion in the Settlement Agreement.

Specifically, in three of these motions in his bankruptcy case, Mr. Murray seeks relief against SLS or its counsel.  These are his Motion for Contempt and for Violation of Automatic Stay (Case No. 17-44157, ECF No. 43); Motion for Contempt (Case No. 17-44157, ECF No. 67); and Motion to Authorize/Direct Canceling of Sale, for Contempt, and for Sanctions (Case No. 17-44157, ECF No. 74).

And in four of these motions, Mr. Murray does not seek relief against SLS.  These are his Motion to Strike for Improper Service (Case No. 17-44157, ECF No. 53); Motion to Strike Nationstar Mortgage LLC's Notice Withdrawing Motion for Relief from Automatic Stay (Case No. 17-44157, ECF No. 65); Motion to Strike Objection to Order to Show Cause to Cancel Sale and for Contempt (Case No. 17-44157, ECF No. 83); and Motion for Contempt and Motion for Sanctions for Violation of the Discharge Injunction (Case No. 17-44157, ECF No. 95).

A review of the docket in Mr. Murray's bankruptcy case also confirms that Mr. Murray and SLS entered into a settlement of certain claims asserted by Mr. Murray for, among other things, violations of the automatic stay.  On October 19, 2018, SLS filed a letter stating that "a settlement in principle has been reached between Mr. Murray, SLS, Gross Polowy, LLC and its employees in relation to the pending litigation before the Court."  Case No. 17-44157, ECF No. 97.  A proposed stipulation and order was filed with the letter, and "[t]he parties request[ed] that the court review [the proposed stipulation] and confirm it meets with the Court's approval."  *Id.*

Thereafter, on March 18, 2020, SLS filed a fully executed Confidential Settlement Agreement, Release of Liability, and Covenant of Non-Disclosure and a Stipulation and proposed Order Withdrawing Applications for Orders to Show Cause as to Gross Polowy, LLC, Attorneys Associated with Gross Polowy, LLC and Specialized Loan Servicing, LLC.  Case No. 17-44157, ECF No 114.

The Settlement Agreement and Stipulation each identify, with specificity, three applications for orders to show cause filed by Mr. Murray in his bankruptcy case. These are the Motion for Contempt and for Violations of the Automatic Stay, filed on March 20, 2018 (Case No. 17-44157, ECF No. 43); the Motion for Contempt and Proposed Order to Show Cause, filed on May 29, 2018 (Case No. 17-44157, ECF No. 67); and the Motion to Authorize/Direct Canceling of Sale, Motion for Contempt, Motion for Sanctions and Proposed Order to Show Cause, filed on July 5, 2018 (Case No. 17-44157, ECF No. 74).

The Settlement Agreement and Stipulation also explicitly withdraw with prejudice these applications. Specifically, the Stipulation states, "[t]he Motions for Orders to Show Cause are hereby withdrawn with prejudice as they relate to Gross Polowy, LLC, . . . and Specialized Loan Servicing, LLC." Case No. 17-44157, ECF No. 114, Exh. A at 2.

The Settlement Agreement also contains a broad and comprehensive release. Specifically, Mr. Murray "forever releases and discharges" "[SLS,] its employees, shareholders, agents, and insured", as well as its former counsel Gross Polowy, LLC, from:

> any and all legal or any other form of liability to which Mr. Murray can or might claim rights to based on any action or inaction by the Released Entities and Individuals as they relate [to] all allegations of wrongdoing, claims, suits, causes of action, rights, demands, costs, expenses, losses, damages or any kind, as set forth in the Motions for Orders to Show Cause, including allegations of violations of the bankruptcy automatic stay, violations of the bankruptcy discharge injunction, contempt of court, actions in bad faith, and violations of the loss mitigation order.

Case No. 17-44157, ECF No. 114 at 2.

And finally, a review of the record in Mr. Murray's bankruptcy case shows that on October 20, 2020, that Stipulation was approved by the Court and so-ordered. Case No. 17-44157, ECF No. 115.

36

In sum, it is plain from the record in Mr. Murray's bankruptcy case that, to the extent he sought relief from SLS in any of the seven motions that are now referenced in the Consolidated Claims for Relief, those claims have been settled and released.

For these reasons, and based on the entire record, SLS has shown that there is no genuine dispute as to a material fact that Mr. Murray has settled and released any claims against SLS in the Consolidated Claims for Relief.

*Whether SLS Has Shown that It Is Entitled to Summary Judgment on Mr. Murray's Alleged Satisfaction and Payment in Full of the Loan*

In order to decide the issues raised by SLS's summary judgment motion, in which SLS seeks the entry of judgment on all of Mr. Murray's Claims for Relief, the Court must consider whether SLS has shown that there is no genuine dispute as to a material fact as to whether Mr. Murray has satisfied and paid in full the loan as a result of his alleged payment to Nationstar or PHH Mortgage Corporation, the servicers of the loan prior to SLS. Simply put, if the loan has been paid, and no balance remains due, then there is no longer an obligation owed by Mr. Murray or a debt to be secured.

In the Complaint, Mr. Murray alleges that the loan was "paid in full on or before the filing date" of his bankruptcy case. Compl. ¶ 29. He also alleges, "[u]pon information and belief, the HSBC Mortgage was satisfied by payment in full from the proceeds advanced in connection with the HSBC Note and Mortgage." Compl. ¶ 42. And he alleges that "[u]pon information and belief, . . . SLS [and others] failed to record a satisfaction of the HSBC Mortgage. Accordingly, there is no amount due and [owing] under the HSBC Mortgage." Compl. ¶ 44. For these reasons, he asserts, he is entitled to judgment declaring that "the HSBC Mortgage is satisfied." Compl. ¶ 45(a).

In his Supplemental Affirmation in Opposition, Mr. Murray makes several additional statements with respect to the question of whether the loan has been paid in full.  He states that in a communication dated August 22, 2017, Nationstar, a predecessor to SLS, advised:

> "Our records . . . reflect that a short payoff of $238,176.42 was received on August 15, 2017.  It was determined that the above amount received was $309.78 short of a full payoff.  Please note that a full payoff must be received in order to apply the funds to the account.  As such, please note the $238,176.42 is being returned."

Supp. Opp. ¶ 23 (quoting Exh. B (letter excerpt from Mr. Cooper)).

Mr. Murray also states that in a January 5, 2018 letter to Certilman Balin Adler & Hyman, LLP, counsel to the Chapter 7 Trustee, Nationstar reported:

> "Pursuant to your request, we have enclosed a copy of the $238,176-42 check that was returned to Mr. Murray on August 15, 2017.  Please note we have also enclosed the Notice of Returned Funds Letter reflecting the check was also being returned due to there not being a MICR Line on the check.  The MICR Line is the line that reflects the bank account number and bank routing number."

Supp. Opp. ¶ 24 (quoting Exh. C (January 5, 2018 letter from Chandler Williams to Andrea Follet)).

In addition, Mr. Murray points to an accounting dated June 6, 2019, "showing the apparent ledgering of [his] full payoff and deposit of August 15, 2017 of $238,176.42 in three lines from 84-86 and reversal on lines 87-89."  Supp. Opp. ¶ 26 and Exh. G.  And he states that "[n]o return of payoff or explanation of dishonor was received."  Supp. Opp. ¶ 27.

SLS responds that while Mr. Murray "makes allegations with respect to the payoff check," the record shows that it was "short of a full reinstatement amount and was returned to [him]."  Supp. Reply ¶ 43.

At the outset, it is absolutely clear – indeed, beyond the scope of reasonable dispute – that if a mortgagor, or any borrower, pays in full the obligation that is owed, then the creditor no

longer has a debt to collect.  A creditor is entitled to be paid once, in full – but only once.  And so, if the record here demonstrates that Mr. Murray has satisfied and paid off the loan in full, then SLS no longer has an obligation to enforce.  And this would be true even in light of this Court's determinations that SLS has standing because it has possession of the original Note, and that SLS's security interest is perfected.

But it is equally clear that, at this stage in these proceedings, a genuine dispute as to a material fact requires more than "[s]tatements in the pleadings alone."  *In re Allou Distribs., Inc.*, 446 B.R. at 49.  This may be especially true where the averments are made on information and belief, as they are here.  Nor, at this stage in these proceedings, is it sufficient to point to the prospect of "some metaphysical doubt as to the material facts."  *Matsushita*, 475 U.S. at 586.

Rather, a genuine dispute as to a material fact requires "going beyond the allegations of the pleadings as the moment has arrived to 'put up or shut up.'"  *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d at 117 (quoting *Weinstock*, 224 F.3d at 41).

Here, the record shows that as a threshold matter, SLS has met its initial burden to show that there is no genuine dispute as to a material fact that Mr. Murray has not satisfied and paid in full the loan.  And the record also shows that the evidence – including documents placed into the record by Mr. Murray – supports that conclusion.

That is, Mr. Murray has provided documentation that contradict his allegation that the loan was "paid in full on or before the filing date" of his bankruptcy case.  Compl. ¶ 29.  This evidence includes an August 22, 2017 communication from Nationstar stating that Mr. Murray's short payoff amount "is being returned."  Supp. Opp. ¶ 23 and Exh. B.  It also includes a January 5, 2018 letter from Nationstar to the Chapter 7 Trustee enclosing a copy of the check that was returned to Mr. Murray and Notice of Returned Funds Letter stating that "the check was also

being returned due to there not being a MICR Line on the check." Supp. Opp. ¶ 24 and Exh. C. And these circumstances are consistent with, and confirmed by, the transaction history issued by Nationstar and, again, placed into the record by Mr. Murray. Supp. Opp. ¶ 26 and Exh. G.

The record also shows that Mr. Murray has not come forward with "evidence sufficient to create a genuine dispute as to a material fact for trial" on this question. *In re Allou Distribs, Inc.,* 446 B.R. at 49. Instead, the evidence that he has presented, as described above, supports the conclusion that the loan has not been satisfied and paid in full.

And finally, this conclusion is consistent with the Chapter 7 Trustee's administration of Mr. Murray's bankruptcy case. There, the Trustee's Rule 2004 Motion, later withdrawn, states that the payment made by Mr. Murray to Nationstar in August 2017 was returned due to being short of the payoff amount. Case No. 17-44157, ECF No. 28, Rule 2004 Motion, at 2-3. The Trustee did not take action to recover any of these funds for the benefit of the estate, and instead, withdrew his Rule 2004 Motion and filed a report of no distribution, stating that he has "made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law." Case No. 17-44157, ECF Entry dated January 15, 2018.

For these reasons, and based on the entire record, SLS has shown that there is no genuine dispute as to a material fact that Mr. Murray has not satisfied and paid in full the loan.

*Whether the New Assertions that Mr. Murray Raises in His Opposition and Supplemental Opposition Amount to Claims Against SLS*

A final question remains to be addressed in the context of Mr. Murray's claims against SLS and this motion for summary judgment. In his opposition to the motion, Mr. Murray makes several new assertions about claims that he may have against SLS, including claims for violations of RESPA, the Real Estate Settlement Procedures Act, as amended by the National

Affordable Housing Act of 1990 and Regulation X (Opp. ¶¶ 7-14), claims that the loan is

unconscionable and predatory (Opp. ¶¶ 24-29), and claims that counsel for SLS has violated the

Code of Professional Conduct and this Court's Administrative Order 568 adopting New York

State's Standards of Civility for the legal profession as guidelines for practice in all cases and

proceedings (Opp. ¶ 6), among other matters.

In particular, Mr. Murray argues that HSBC, the original lender and servicer, did not

comply with the time frames set forth for responding to Requests for Information and Notices of

Error that Mr. Murray sent on June 5, 2014.  Opp. ¶¶ 7-14.  He states that the lender did not send

him a 30-day notice prior to acceleration and commencing a foreclosure.  Opp. ¶¶ 16-17.  Mr.

Murray also argues that the loan is unconscionable and predatory.  Opp. ¶¶ 25-27.  And Mr.

Murray raises the possibility of identity theft and the reporting of false information about his

loan to the Internal Revenue Services.  Supp. Opp. ¶ 29, Exhs. H-L.

SLS responds that these new allegations are not set forth in the Complaint, and amount to

"entirely new claims."  Reply ¶ 21.  It asserts that these new claims and theories of liability,

including RESPA violations and predatory lending, should not be considered by the Court when

they arise "for the first time in opposition to summary judgment."  Reply ¶ 24.  SLS argues that

"'[i]t is black letter law that a party may not raise new claims for the first time in opposition to

summary judgment.'"  Reply ¶ 24 (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261,

278 (S.D.N.Y. 2010)).

And SLS points to several courts that have reached the same conclusion.  *See* Reply ¶ 24

(citing *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701-02 (2d Cir. 2010) (declining to

consider claims raised for the first time in opposition to summary judgment); *Casseus v. Verizon

New York, Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) (finding that a plaintiff's new

allegations could not be considered and even if they were, the new claims lacked merit); *Heletsi v. Lufthansa German Airlines, Inc.*, 2001 WL 1646518, at *1 n.1 (E.D.N.Y. Dec. 18, 2001) (observing that "[a] party cannot amend their complaint simply by alleging new facts and theories in their memoranda opposing summary judgment")).

Here, the record shows that Mr. Murray does not attempt to assert claims arising under RESPA, claims for predatory lending or unconscionability, claims for identity theft, or claims for violations of New York's Rules of Professional Conduct or this Court's Standards of Civility in the Complaint.  They are not contained within his First or Second Claims for Relief, or in the Consolidated Claims for Relief.  And as other courts have found, they cannot be made a part of this action "by alleging new facts and theories in [his Opposition and Supplemental Opposition] opposing summary judgment." *Id.*

For these reasons, and based on the entire record, this Court concludes that the new assertions that Mr. Murray raises in his Opposition and Supplemental Opposition to SLS's Motion for Summary Judgment do not amount to claims against SLS in this adversary proceeding.

## Conclusion

For the reasons stated herein, and based on the entire record, the Motion for Summary Judgment of Defendant Specialized Loan Servicing, LLC is granted.  An Order and Judgment in accordance with this Memorandum Decision shall be entered simultaneously herewith.

**Dated: Brooklyn, New York**
**December 15, 2020**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**